ARTHUR M. JUNGREIS,[1] PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6218-69.   Filed December 24, 1970.

[1] This case is similar to the cases of Sandra Joy Holstein, docket No. 373-70; and L. Barry Woodward and Alta M. Woodward, docket No. 2616-70, which were previously consolidated for trial.

*Robert E. Oliphant*, for the petitioner.
*Tom G. Parrott*, for the respondent.

OPINION

DAWSON *Judge:* Respondent determined a deficiency of $65.24 in petitioner's Federal income tax for the year 1967.

Petitioner has conceded two adjustments made by respondent. The only issue presented for decision is whether the petitioner is entitled to deduct under section 162(a), I.R.C. 1954,[2] and section 1.162–5, Income Tax Regs., as amended in T.D. 6918, 1967–1 C.B. 36, expenses incurred in taking graduate courses while serving as a graduate teaching assistant during 1967 at the University of Minnesota.[3]

All of the facts have been stipulated. The stipulation of facts and supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference and are adopted as our findings. The pertinent facts are set out below.

Arthur M. Jungreis (herein called petitioner) was a legal resident of St. Paul, Minn., at the time he filed his petition in this proceeding. He filed his Federal income tax return for the year 1967 with the district director of internal revenue at St. Paul.

Petitioner received a bachelor of science degree in 1963 from the University of Michigan.

On January 26, 1965, petitioner submitted an application for a

---

[2] All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[3] Counsel informed the Court that there are over 100 graduate teaching assistants at the University of Minnesota who have made similar claims for education expenses and that there are other related cases pending elsewhere throughout the country.

general fellowship or for appointment as a graduate teaching assistant in the Zoology Department at the University of Minnesota (herein referred to as the university). In the space provided for a statement of the applicant's immediate and long-range occupational objectives on both the application for graduate school and the application for a fellowship, assistantship, or scholarship, petitioner stated, in part, "I have the maturity, depth and ability to successfully pursue a career in Zoology. I hope to remain in the academic community after receipt of a Ph. D." The printed instructions at the top of the application for fellowship, assistantship, or scholarship submitted by petitioner inform the applicant, in part, that "application to the Graduate School is a prerequisite to the granting of an assistantship, fellowship or scholarship."

On January 28, 1965, petitioner submitted an application for admission to the graduate school at the university.

Petitioner was appointed as a graduate teaching assistant in the zoology department at the university in December 1965. The appointment was on the basis of 25 percent of full-time service and covered the period from December 16, 1965, to March 15, 1966.

Petitioner was reappointed as a graduate teaching assistant in the zoology department at the university in March 1966. Such appointment was on the basis of 50 percent of full-time service and covered the period from March 16, 1966, to June 15, 1966.

Petitioner was reappointed as a graduate teaching assistant in the zoology department at the university in May 1967. Such appointment was on the basis of 50 percent of full-time service and covered the period from June 16, 1967, to August 15, 1967.

Petitioner completed the requirements for the master of science degree in zoology in December 1966 and received the degree in March 1967.

During the year 1967 the petitioner was a candidate for the doctor of philosophy degree in zoology at the university and was enrolled as a graduate student at the university.

Graduate teaching assistants in the zoology department at the university did not have a vote at faculty meetings in the zoology department and did not attend such meetings during 1967.

The maximum period during which a person could serve under an appointment as a graduate teaching assistant in the zoology department at the university during 1967 was 5 years.

Approximately 100 percent of the graduate teaching assistants in the zoology department at the university eventually qualify for a position as a regular full-time faculty member at some educational institution.

The minimum educational requirement for employment as a regular full-time faculty member in the zoology department at the university during 1967 was a Ph. D. degree.

The zoology department at the university could not conduct its teaching activities without the employment of graduate students.

All laboratory and conference sections of the freshman zoology courses are taught by graduate teaching assistants and graduate teaching associates. Teaching assistants and teaching associates in the zoology department do not prepare or deliver any lectures. All lectures in the zoology department are prepared and delivered by permanent, full-time staff members. Classroom lectures, laboratory sections, and discussion sections are all parts of a single course in the zoology department.

During the year 1967 the minimum educational requirements for the position of graduate teaching assistant in the zoology department at the university was bachelor of science degree.

During the year 1967 the petitioner taught laboratory sections in comparative physiology. There were a minimum of 20 students in the section he taught. Petitioner spent from 40 minutes to 1 hour per laboratory session lecturing to these students. He spent approximately 10 hours per week preparing for the lectures he gave the students. Petitioner prepared a final laboratory examination, administered it, and graded the examination. He spent about 5 hours per week outside the class checking and grading laboratory reports. A student's laboratory grade counted as 25 percent of his final grade in comparative physiology.

During the year 1967 an individual was required to be enrolled in or approved for admission to the graduate school at the university before he could hold an appointment as a graduate teaching assistant.

A graduate teaching assistant at the university during 1967 was required to be making satisfactory progress toward a graduate degree each academic quarter that he held an appointment in that capacity.

A graduate teaching assistant at the university during 1967 was required to pay fees for enrollment in the graduate school at the beginning of each of the academic quarters before he became eligible to receive his first payroll check for the services rendered as a graduate teaching assistant.

Appointments to positions of graduate teaching assistant were designated by the university as "nonregular." Such appointments were regarded as temporary positions because they were not established in the university's on-going budget and were not funded on a continuing basis. Each nonregular appointment at the university during 1967 was a single and indivisible contract. No number of appointments

or reappointments to any nonregular position at the university during 1967 created any presumption of a right to reappointment or to indefinite tenure. Nonregular appointments at the university during 1967 terminated at the end of the period of appointment.

The term "nonregular" appointment refers to the permanence of the faculty position rather than the senior status of the faculty. Thus, nationally renowned full-time professors at other colleges and universities who are teaching at the University of Minnesota while on leave from other colleges or universities are "nonregular" faculty members at the university, as are a number of associate professors and assistant professors who are initially employed on special contracts for a term of 2 or 3 years, except that the latter may be eligible for some benefits. Teaching assistants and associates have "regular payroll" appointments at the university.

The amount of service required of an individual serving under an appointment as a graduate teaching assistant at the university during 1967 ranged from one-fourth to three-fourths of full-time service.

All appointments as graduate teaching assistants at the university during 1967 served the dual purpose of providing financial aid to graduate students and of providing the members of the regular faculty with assistants.

A graduate teaching assistant at the university during 1967 was not granted tenure, nor were his years of service in that capacity counted toward obtaining tenure.

A graduate teaching assistant at the university during 1967 was not eligible to participate in the following plans provided for regular members of the faculty: Group Life Insurance Plan, Group Income Disability Insurance Plan, and Faculty Retirement Plan.

A graduate teaching assistant at the university during 1967 was not eligible for coverage under the Old Age, Survivors, and Disability Insurance of the Federal Social Security Act.

The position of graduate teaching assistant was below the rank of instructor or research fellow on the academic staff at the university during 1967.

Appointments for the position of graduate teaching assistant are usually made only for a term of 1 school year. If a graduate teaching assistant makes satisfactory progress in his job and makes satisfactory progress toward obtaining a graduate degree, his appointment will usually be renewed if sufficient funds are available to the university.

The maximum period during which a person could retain an appointment as a graduate teaching assistant at the university during 1967 varied from 3 to 5 years, depending upon the department of the university in which the graduate teaching assistant worked.

Only a very small percentage of the graduate teaching assistants employed by the university obtain employment as regular full-time teachers or faculty members at the university. Most of them who become regular full-time teachers or faculty members obtain employment at a college, university, or educational institution other than the University of Minnesota.

Employment as a graduate teaching assistant at the university is a helpful qualification for a person seeking employment as a regular full-time teacher or faculty member at the college or university level.

The University Senate at the university was the voice of the faculty during 1967. It had legislative control over educational matters concerning the university as a whole. Graduate teaching assistants at the university during 1967 did not have a vote in the University Senate.

Faculty housing projects and faculty homesites, which were made available to regular faculty members at the university, were not made available to graduate teaching assistants during 1967.

Graduate teaching assistants at the university during 1967 were not eligible for membership in the following faculty clubs: The Campus Club, The Faculty Women's Clubs, and The Faculty Dancing Club.

The four classes of regular faculty positions at the university during 1967 were: Professor, associate professor, assistant professor (including research associate), and instructor (including research fellow). All other positions at the university during 1967 which were concerned with teaching research and other academic services were "nonregular" positions.

Registration in the graduate school of the university required the payment of tuition and fees which the petitioner incurred during 1967 in the amount of $296. Petitioner claimed such amount as an ordinary and necessary business expense on his Federal income tax return for 1967. Respondents disallowed the claimed deduction in his notice of deficiency dated September 18, 1969.

This case involves the application and interpretation of section 162(a)[4] and section 1.162–5, Income Tax Regs.,[5] as amended by T.D.

---

[4] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

[5] Sec. 1.162–5 Expenses for education.

(a) *General rule.* Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b) (2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, or

6918, 1967–1 C.B. 36. We note at the outset that the subjective intention test is embodied in respondent's 1958 regulations and the objective fact test is embodied in respondent's 1967 regulations. Respondent has ruled that a taxpayer may elect to apply either set of regulations to taxable years beginning before January 1, 1968. Rev. Rul. 68–191,

---

(2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

(b) *Nondeductible educational expenditures*—(1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations.

(2) *Minimum educational requirements.* (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed.

(ii) The minimum educational requirements for qualification of a particular individual in a position in an educational institution is the minimum level of education (in terms of aggregate college hours or degree) which under the applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position. If there are no normal requirements as to the minimum level of education required for a position in an educational institution, then an individual in such a position shall be considered to have met the minimum educational requirements for qualification in that position when he becomes a member of the faculty of the educational institution. The determination of whether an individual is a member of the faculty of an educational institution must be made on the basis of the particular practices of the institution. However, an individual will ordinarily be considered to be a member of the faculty of an institution if (a) he has tenure or his years of service are being counted toward obtaining tenure; (b) the institution is making contributions to a retirement plan (other than Social Security or a similar program) in respect of his employment; or (c) he has a vote in faculty affairs.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) *Deductible educational expenditures*—\* \* \*

(2) *Meeting requirements of employer.* An individual is considered to have undertaken education in order to meet the express requirements of his employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his established employment relationship, status, or rate of compensation only if such requirements are imposed for a bona fide business purpose of the individual's employer. Only the minimum education necessary to the retention by the individual of his established employment relationship, status, or rate of compensation may be considered as undertaken to meet the express requirements of the taxpayer's employer. However, education in excess of such minimum education may qualify as education undertaken in order to maintain or improve the skills required by the taxpayer in his employment or other trade or business (see subparagraph (1) of this paragraph). In no event, however, is a deduction allowable for expenditures for education which, even though for education required by the employer or applicable law or regulations, are within one of the categories of nondeductible expenditures described in paragraph (b) (2) and (3) of this section.

1968–1 C.B. 67. The petitioner in this case has chosen to rely only upon the 1967 regulations.[6]

Respondent asserts that the education undertaken by petitioner was not to maintain or improve skills required in his employment as a teaching assistant. Petitioner does not dispute this assertion because he has offered no evidence which shows a direct and proximate relationship between the particular graduate courses he took and the particular job skills required in his employment as a teaching assistant.

Petitioner's first contention is that the education for which he incurred expenses met the express requirements of his employer imposed as a condition to the retention by him of an established employment relationship, status, or rate of compensation. Sec. 1.162–5 (a) (2), Income Tax Regs. In reply to petitioner's claim that he was registered as a student in the graduate school in order to "retain" his employment as a "college teacher," respondent argues that the university required petitioner to be registered as a student in the graduate school in order to "obtain" his employment as a teaching assistant. We agree with the respondent.

Appointment as a teaching assistant combined with graduate education is a program in the nature of an apprenticeship, the purpose of which is to *qualify* a person for a permanent career as a teacher or professor at the college or university level. One of the requirements for the allowance of a deduction under section 162(a) is that the expense must be paid or incurred during the taxable year *in carrying on a trade or business*. Thus, a taxpayer must be engaged in a trade or business at the time he pays or incurs an expense which is deductible under section 162(a). This is the clear import of section 1.162–5(a) (2) of the 1967 regulations which speaks of "the express requirements of the individual's *employer* * * * imposed as a condition to the *retention* by the individual of an *established employment relationship*, status, or rate of compensation." (Emphasis supplied.)

A teaching assistant at the university during 1967 was required to be enrolled in or approved for admission to the graduate school before he could hold an appointment as a teaching assistant. A teaching assistant was required to pay fees for enrollment in the graduate school at the beginning of each academic quarter *before* he was eligible to receive the first payroll check for the services rendered by him as a teaching assistant. Appointments as teaching assistants were usually made only for a term of 1 school year and they terminated at the end of the period of appointment. Each appointment or reappointment as

---

[6] Petitioner does not challenge the validity of the 1967 regulations, but attempts to come within their framework. Besides, such regulations have previously received the approval of this Court. See *Ronald F. Weiszmann*, 52 T.C. 1106 (1969) ; *Jeffry L. Weiler*, 54 T.C. 398 (1970) ; and *Stanley Marlin*, 54 T.C. 560 (1970).

a teaching assistant was a separate and distinct employment contract. No number of appointments or reappointments as a teaching assistant created any presumption of right to reappointment. Consequently, all of the educational expenses incurred by petitioner were conditions precedent which were required in order to "obtain" a new employment contract rather than conditions subsequent required to "retain" an established employment relationship. The educational expenses incurred by him were clearly for the purpose of "commencing" and "increasing," rather than for "carrying on" or "preserving," and therefore do not constitute allowable deductions under section 162(a) of the Code, section 1.162–5(a)(2) of the 1967 regulations, or the principles enunciated in *Hill* v. *Commissioner*, 181 F. 2d 906 (C.A. 4, 1950).

Petitioner's second contention is that the educational expenses he incurred were not expenditures required of him in order to meet the minimum educational requirements for qualification in his employment because he had already met the minimum educational requirements for the position of teaching assistant. To the contrary, respondent argues that the education undertaken by the petitioner was required in order to meet the minimum educational requirements for qualification or establishment in his intended trade or business of being a teacher or professor at the college or university level. Again we agree with the respondent.

There is a basic fallacy in petitioner's argument. He seems to be relying on the first sentence of paragraph (b)(2)(ii) of the 1967 regulations for the proposition that once an individual meets the minimum educational requirements for *any position* at an educational institution, he cannot thereafter be denied an educational expense deduction under paragraph (b)(2) of the regulations. However, a close reading of paragraph (b)(2)(ii) and the examples cited in paragraph (b)(2)(iii) make it clear that the "position" at an educational institution for which an individual must meet the minimum educational requirements before he will no longer be denied a deduction is a *permanent position* on the faculty of the institution. The first sentence of paragraph (b)(2)(ii) provides that the minimum educational requirements for qualification of an individual in a position in an educational institution is the minimum level of education which is normally required of an individual initially being employed in such a position. That sentence, standing alone, seems to support petitioner's interpretation of paragraph (b)(2)(ii). But the remaining sentences make the error of petitioner's interpretation apparent. The second sentence provides that if there are no normal requirements, then an individual in such a position shall be considered to have met the

minimum educational requirements for qualification in that position when he becomes a member of the faculty. The last sentence of the paragraph provides that an individual will ordinarily be considered to be a member of the faculty of an institution if (a) he has tenure, (b) the institution is making contributions to a retirement plan in respect of his employment, and (c) he has a vote in faculty affairs. These further provisions make it plain that the intent of paragraph (b) (2) (ii) is that an individual shall be considered to have met the minimum educational requirements for qualification in a position in an educational institution when he has qualified as, or becomes, a permanent member of the faculty of the institution. This interpretation is supported by the examples contained in section 1.162–5 (b) (2) (iii), and in particular Example (2), which is quite similar to the facts of the instant case:

Example (2). D, who holds a bachelor's degree, obtains temporary employment as an instructor at University Y and undertakes graduate courses as a candidate for a graduate degree. D may become a faculty member only if he obtains a graduate degree and may continue to hold a position as instructor only so long as he shows satisfactory progress towards obtaining this graduate degree. The graduate courses taken by D constitute education required to meet the minimum educational requirements for qualification in D's trade or business and, thus, the expenditures for such courses are not deductible.

An application of the tests set out in section 1.162–5 (b) (2) (ii) of the regulations to this case shows the following: The minimum level of education in terms of a college degree which is normally required of an individual initially being employed in a permanent position in the zoology department of the university is a Ph. D. degree. Petitioner did not possess a Ph. D. degree in 1967. He did not have tenure, and his years of service as a teaching assistant were not counted toward obtaining tenure. The university did not make any contributions to any retirement plan with respect to petitioner's employment during 1967. Petitioner did not have a vote in faculty affairs. Other "particular practices" of the university which distinguished the position of the petitioner from the position of regular, full-time faculty members are: (1) The petitioner did not have a vote in the University Senate; (2) faculty housing projects and faculty homesites were not made available to the petitioner; and (3) the petitioner was not eligible for membership in faculty social clubs. Hence, under the tests of paragraph (b) (2) (ii) of the regulations, it is clear that the petitioner had not met the minimum educational requirements for a faculty position at the university during 1967.

In *Ronald F. Weiszmann*, 52 T.C. 1106 (1969), on appeal (C.A. 9), this Court recognized that the prohibitions of sections 262 and 263 of the Code must be borne in mind in determining what educational

expenses are deductible. As we pointed out in that case, the regulations attempt to distinguish between those educational expenses which are "ordinary and necessary" expenses of a trade or business and those which are personal and capital expenditures. This distinction is the very basis for the minimum educational requirements prohibition contained in section 1.162–5(b)(2)(ii) of the regulations. They recognize that the expense for education which qualifies an individual for his intended trade or business or profession is so inherently personal and capital in nature that it is not a deductible expense *even though* it maintains or improves the skills required by the individual in his employment and *even though* it meets the express requirements of the individual's employer. In other words, such an educational expense is nondeductible *even though* there exists a legitimate business purpose for incurring such expense. It is essential to recognize the balance which must be maintained between section 162 on the one hand and sections 262 and 263 on the other hand in deciding the deductibility of educational expenses. Cf. *Carroll* v. *Commissioner*, 418 F.2d 91 (C.A. 7, 1969), affirming 51 T.C. 213 (1968).

A teaching assistant holds a temporary, rather than a permanent, position. Petitioner in this case was seeking his doctorate in order to qualify for a permanent position as a regular full-time college teacher. To allow him an educational expense deduction for his tuition and to deny a deduction for the same expenditures to a regular graduate student, who is not serving as a teaching assistant, but who is pursuing the same career objective, would result in an unintended tax advantage to the petitioner. The tuition and fees paid by each are simply nondeductible personal expenditures. And, by analogy, expenses incurred by this petitioner should stand on no different footing than the educational expenses of a law school student employed as a law clerk in a firm (Example (3), sec. 1.162–5(b)(2)(iii), Income Tax Regs.) or a medical student temporarily employed as a technician or in some other capacity at a hospital.

In support of his position that the educational expenses he incurred are deductible, petitioner cites *Marlor* v. *Commissioner*, 251 F.2d 615 (C.A. 2, 1958), reversing 27 T.C. 624 (1956), which adopted the dissenting opinion of this Court; and *United States* v. *Michaelsen*, 313 F.2d 668 (C.A. 9, 1963), affirming *Elmer R. Johnson*, a Memorandum Opinion of this Court.

We think the *Marlor* case is distinguishable from this case. In *Marlor*, the taxpayer was initially appointed in 1950 as a tutor in speech at Queens College for 1 year without any specific requirement at that time that he take graduate courses toward obtaining a doctoral de-

gree. In subsequent years it was made clear to him by the college that it was necessary for him to make substantial progress toward his doctorate in order to *retain* his position as tutor. His dominant and immediate objective at the end of his first year as tutor was to keep that position and to earn the compensation it paid. If the attainment of his doctorate in order to qualify for appointment to the permanent staff of the college had been his only or dominant purpose, then his expenses would not have been deductible "any more than educational expenses generally that are incurred by one who is preparing for his profession or calling in life." *Clark S. Marlor*, 27 T.C. at 626. By contrast, the dominant, and perhaps the only, objective of the petitioner in this case was to *obtain* his Ph. D. in zoology so that he could qualify for his intended trade or business of being a teacher or professor at the college or university level. Obtaining the position of teaching assistant was only incidental to the achievement of his ultimate career objective. This was borne out by the statements made in his "Application for Fellowship, Assistantship, or Scholarship." Moreover, the facts of the instant case clearly give rise now to a nondeductible educational expense deduction under section 1.162-5(b)(2)(iii), Example (2), of the 1967 regulations.[7] Cf. *Jeffry L. Weiler*, 54 T.C. 398, 402 (1970).

The facts in the *Johnson* case are also distinguishable from the facts of this case. In *Johnson*, the taxpayer was performing the same duties, working the same amount of time, and receiving the same salary before she received her permanent teaching certificate as would be the case after she received her permanent teaching certificate. By contrast, the petitioner herein was performing different duties, working only part-time, and receiving less salary than would be the case after he qualified as a regular faculty member. Moreover, the facts in *Johnson* now give rise to a nondeductible educational expense deduction under section 1.162-5(b)(2)(iii), Example (1), Situation 3, of the 1967 regulations, the only one cited and relied on by petitioner in his briefs. Cf. *Jeffrey L. Weiler, supra* at 402.

Accordingly, we hold that the petitioner has failed to meet his burden of establishing his right to an educational expense deduction under either section 1.162-5(a)(1) or (a)(2) of the 1967 regulations. We further hold that the education undertaken by the petitioner at the university was required in order to meet the minimum educational

---

[7] It is well established that a Treasury regulation should not be overruled except for weighty reasons, and should be sustained unless unreasonable and plainly inconsistent with the statute. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496 (1948). We see no weighty reasons for declaring this particular regulation invalid.

requirements for qualification or establishment in his intended trade or business of being a teacher or professor at the college or university level.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

TANNENWALD, *J.*, concurring: To me this case should be disposed of without engaging in the dialectics reflected by the majority opinion. In the first place, petitioner has not put the validity of respondent's regulations in issue and those regulations specifically deny the claimed deduction. See sec. 1.162–5(b)(2)(iii), Example (2), Income Tax Regs. In the second place, as I view the facts, petitioner herein worked because he studied. He did not study because he worked. On this basis alone, *Marlor* v. *Commissioner*, 251 F. 2d 615 (C.A. 2, 1958) reversing 27 T.C. 624 (1956), and *United States* v. *Michaelsen*, 313 1 2d 668 (C.A. 9, 1963), affirming *Elmer R. Johnson*, a Memorandum Opinion of this Court, are distinguishable.

QUEALY, *J.*, agrees with this concurring opinion.