Nathan Fleischer v. Commissioner.
Fleischer v. Commissioner
Docket No. 550-67.
United States Tax Court
T.C. Memo 1971-163; 1971 Tax Ct. Memo LEXIS 167; 30 T.C.M. (CCH) 699; T.C.M. (RIA) 71163; July 15, 1971, Filed Nathan Fleischer, pro se, Grossinger Hotel, Grossinger, N. Y. Robert K. Dixon, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies of $634.57 and $690.05 in petitioner's income tax for the calendar years 1964 and 1965, respectively. The principal issue presented is whether certain educational expenses incurred by petitioner in attending Yeshiva University during the years in question are deductible as ordinary and necessary business expenses. If this question is resolved favorably to petitioner, we must also consider whether he is entitled to a deduction for transportation, meal, and lodging expenses allegedly incurred *168 while he was "away from home" and attending Yeshiva University. Findings of Fact The parties have stipulated certain facts which, together with the attached exhibits, are incorporated herein by this reference. Petitioner Nathan Fleischer filed individual income tax returns for the calendar years 1964 and 1965 with the district 700 director of internal revenue at Albany, New York, and resided in the State of New York when the petition was filed in this case. Prior to 1929 petitioner attended Fordham University as an undergraduate in a "pre-legal" curriculum. From September, 1929, until June, 1932, petitioner, without having obtained a college degree, attended Brooklyn Law School and obtained a Bachelor of Laws degree from that school in June of 1932. He was admitted to the Bar of the State of New York in 1933 and practiced law in New York City from 1933 until approximately 1941. During his boyhood petitioner had become interested in hypnosis. Prior to 1952 and during the period in which he practiced law, petitioner frequently performed as a "stage hypnotist" and "entertainer" before social and fraternal organizations and other groups. Since 1952 petitioner has been *169 employed at the Grossinger Hotel ("Grossinger's") in Grossinger, New York. Grossinger's is a large resort hotel located in a resort area in the Catskill Mountains, about 90 miles north of New York City. It was open all year round, and had as many as 1,500 guests at a time during the summer months; it accommodated both convention groups and regular guests. Grossinger's offered its guests a wide variety of recreational activities; entertainment by professional musicians, singers, and comedians; lectures; and a variety of other activities. Petitioner was employed as part of Grossinger's daytime activity program; he gave demonstrations in the "art and science of hypnosis" and lectures concerning relaxation, sleep, habit control, and human relations and behavior. Petitioner was given a room and meals at the hotel. However, generally his duties required that he be at Grossinger's only on Friday, Saturday, and Sunday of each week to give his demonstrations and lectures during the weekend. In addition, he occasionally took over the role of daytime activities director when the regular director was on vacation. Between 1952, when he began working at Grossinger's, and the end of 1957, petitioner *170 generally maintained a place to stay when in New York City, apparently an extra room at the home of relatives. Prior to 1953 petitioner had no formal education in psychology. During 1953 he took two or three undergraduate courses in psychology at Columbia University. In late 1957 Paul Grossinger, then executive vice-president and general manager of Grossinger's, became concerned that Grossinger's might be risking tort liability by permitting its guests to be hypnotized by an individual who had not been properly trained. He informed petitioner that he would not permit him to continue at the hotel unless he qualified himself as a hypnotist. However, Mr. Grossinger did not specify any particular type of training or qualification that petitioner would be required to obtain. Moreover, Mr. Grossinger agreed to allow petitioner to continue his demonstrations at the hotel while he was undergoing his training. Petitioner returned to school, in part as a consequence of the foregoing discussion with Mr. Grossinger and in part in order to enhance his personal prestige. Petitioner took undergraduate courses in psychology at Brooklyn College from February, 1958, to September, 1959, and at *171 New York University during the summer of 1958. From September, 1959, to June, 1966, petitioner attended the Graduate School of Education of Yeshiva University in New York City, where he obtained a Master of Science degree in general psychology on September 15, 1960, and a Doctor of Philosophy degree in general psychology on June 16, 1966. After obtaining his doctorate degree petitioner became affiliated with the New York University Medical Center, Institute for Physical Medicine and Rehabilitation, as a trainee in psychology and hypnosis. As a trainee he worked with patients who were neuromuscularly impaired or brain damaged or both and used hypnosis for purposes of pain control. Two years of supervised experience in the field of psychology are required in order to become a licensed psychologist in the State of New York. 16 McK. Consol. Laws sec. 7605(1)(e). Although petitioner's year at the N.Y.U. Medical Center qualified as one such year, at the time of the trial herein, petitioner had not undertaken a second year of supervised experience and had not yet become a licensed psychologist. In 1958, when petitioner returned to school to study for his doctorate degree, he rented an *172 apartment at 25 Central Park West in New York City where he resided during the week. In 1960 he moved into a studio at Carnegie Hall which he rented until 1969. Generally, between 1958 and 701 1966, petitioner stayed in New York City during the week; ordinarily, he left for Grossinger's on Thursday night, spent the weekend there, and returned to New York City on Sunday. During the calendar years 1964 and 1965 petitioner made the following expenditures relating to his studies at Yeshiva University and his apartment in New York City: 1964
1965
tuition
$ 232.50
$ 455.00
books
53.41
14.35
dissertation expenses
61.35
936.50
rent 1,200.00
700.00
Total
$1,547.26
$2,105.85
Between 1958 and 1966, while he was studying for his doctorate degree, petitioner's principal source of income was the salary paid to him by Grossinger's. Apart from interest and dividends, the only other sources of income disclosed by the record were stipends received for occasional outside lectures and "gratuities" received from guests at Grossinger's. On his individual Federal income tax return for 1964 petitioner reported as income only $5,419.60 in salary from the Grossinger *173 Hotel, and $890.08 in dividends and interest. Similarly, on his 1965 return petitioner reported as income only $5,415 in salary from the Grossinger Hotel and $796.34 in dividends and interest. After he received his doctorate degree in 1966, petitioner began to use the title of "Doctor"; he used stationery with a letterhead which read "Dr. Nathan Fleischer" and gave his New York City address and telephone number; and he began to perform services for individuals on a private basis at his Carnegie Hall studio. He received fees for such services and in 1969 he received approximately $5,000 in fees, roughly equal to the salary he continued to receive from Grossinger's for his presentations at the hotel. On his Federal income tax returns for 1964 and 1965 petitioner claimed deductions of $2,562.72 and $3,982.50 as "Expenses for Education." In his deficiency notices to petitioner, the Commissioner disallowed such deductions. Opinion RAUM, Judge: The controversy in this case relates to the deductibility of expenses which petitioner incurred in 1964 and 1965 in connection with his studies at Yeshiva University. Section 162(a), I.R.C. 1954, authorizes a deduction for all "ordinary and *174 necessary" business expenses. [1] The Commissioner has promulgated regulations under that section which are designed to distinguish between expenditures for education which are "ordinary and necessary" expenses and those which are personal or capital in nature. Arthur M. Jungreis, 55 T.C. 581, 591; Ronald F. Weiszmann, 52 T.C. 1106, 1111, affirmed per curiam, 443 F. 2d 29 (C.A. 9). The years here in controversy are 1964 and 1965, and the Commissioner has ruled that with respect to taxable years beginning before January 1, 1968, taxpayers may rely on either regulations issued in 1958 [2] or revised regulations 702 promulgated in 1967. [3]Rev. Rul. 68-191, 1968-1 C.B. 67; Arthur M. Jungreis, supra, 55 T.C. at 587; Ronald F. Weiszmann, supra, 52 T.C. at 1108. Although petitioner appears to have relied exclusively on the 1958 regulations, we will consider his position under the 1967 regulations as well. Cf. Ronald F. Weiszmann, supra, 52 T.C. at 1108; Burke W. Bradley, Jr., 54 T.C. 216, 219. *175 We note initially that petitioner was before us on an earlier occasion to contest the Commissioner's determination that the educational expenses he incurred in 1961, 1962, and 1963 were not deductible business expenses. We upheld the Commissioner's determination under the 1958 regulations and our decision was affirmed by the Court of Appeals for the Second Circuit. Nathan Fleischer, T.C. Memo. 1967-85, affirmed 403 F. 2d 403 (C.A. 2). After a careful review of those decisions and of all of the evidence now before us, we think that there is no reason to reach a different result with respect to the taxable years 1964 and 1965. The 1958 regulations make petitioner's primary purpose in undertaking his 703 educational endeavors central in determining the deductibility of his expenses. We think that the education undertaken by petitioner in 1964 and 1965 was not done primarily to maintain or improve skills required by him in his employment or to meet the express requirements of his employer. Although petitioner was told that he would have to "qualify" himself as a hypnotist in order to remain at Grossinger's, we think that the cost, intensity, scope and *176 duration of petitioner's education far exceeded that required by either the demands of his job or those of his employer, at least to the extent that his educational activities extended into the years 1964 and 1965 which are now before us. The fact that Grossinger's continued to employ petitioner during the eight years that it took him to earn his doctorate suggests that his educational pursuits far exceeded any training which Mr. Grossinger considered necessary to protect the hotel against possible tort liability. [4] Petitioner was primarily a performer at Grossinger's. His education qualified him to serve as a professional psychologist, and we think he undertook his education with that end primarily in mind. Petitioner's service as a trainee after he completed his doctorate and his private practice, from which in 1969 he derived fees approximately equal to his salary from Grossinger's, clearly reveal that his training enabled him to alter the character of his career. To be sure, petitioner's education may have helped him improve his presentations at Grossinger's. Nevertheless, we are convinced that petitioner did not undertake such education primarily in response to the needs or requirements *177 of his employment there. The 1958 regulations make petitioner's purpose dispositive of this case. For this reason we do not consider it particularly significant that petitioner failed to complete a second year of supervised experience and thereby failed to satisfy the requirements for becoming a licensed psychologist in the State of New York. Licensed as a psychologist or not, petitioner intended to become and did become a trained professional. *178 Petitioner fares no better under the 1967 regulations. They do not rely on the taxpayer's primary purpose, and deny deductibility to expenses incurred for "education which is part of a program of study being pursued by * * * [the taxpayer] which will lead to qualifying him in a new trade or business." Regs. section 1.162-5(b)(3), Example (2). Petitioner's program of study was obviously designed to and did qualify him for a new trade or business. The Commissioner's determination must therefore be sustained. See Fleischer v. Commissioner, 403 F. 2d 403, 407 (C.A. 2) (rejecting the taxpayer's claim under the 1967 regulations). In view of our disposition of this case we need not consider the Commissioner's contention that even if petitioner's expenditures for tuition and books were deductible, his travel expenses were not incurred while "away from home" within the meaning of section 162(a)(2) and are therefore not deductible. Decision will be entered under Rule 50. 704 Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. ↩
2. Sec. 1.162-5. Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible. ↩
3. Sec. 1.162-5. Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. (b) Nondeductible educational expenditures - (1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed. * * * (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. * * * (ii) The application of this subparagraph to individuals other than teachers may be illustrated by the following examples: Example (1). A, a self-employed individual practicing a profession other than law, for example, engineering, accounting, etc., attends law school at night and after completing his law school studies receives a bachelor of laws degree. The expenditures made by A in attending law school are nondeductible because this course of study qualifies him for a new trade or business. Example (2). Assume the same facts as in example (1) except that A has the status of an employee rather than a self-employed individual, and that his employer requires him to obtain a bachelor of laws degree. A intends to continue practicing his nonlegal profession as an employee of such employer. Nevertheless, the expenditures made by A in attending law school are not deductible since this course of study qualifies him for a new trade or business. * * * (c) Deductible educational expenditures - * * * (2) Meeting requirements of employer. * * * Only the minimum education necessary to the retention by the individual of his established employment relationship, status, or rate of compensation may be considered as undertaken to meet the express requirements of the taxpayer's employer. However, education in excess of such minimum education may qualify as education undertaken in order to maintain or improve the skills required by the taxpayer in his employment or other trade or business (see subparagraph (1) of this paragraph). In no event, however, is a deduction allowable for expenditures for education which, even though for education required by the employer or applicable law or regulations, are within one of the categories of nondeductible expenditures described in paragraph (b)(2) and (3) of this section.↩
4. That petitioner was pursuing his studies primarily on his own and not primarily in response to requirements imposed by Mr. Grossinger is revealed by the following except from the deposition of Mr. Grossinger, taken after the trial herein and submitted by petitioner as part of the record in this case: Q. Well, now, what I was getting at awhile ago is when he told you that he had gotten his Masters, would this have satisfied you that he had proper qualifications or did you tell him that wasn't enough? A. All I can tell you, I didn't put any limit as to how short or how far he could go. Q. You in fact didn't know. A. I didn't know but I did know that from time to time from what he told me that he was really moving to an nth degree on this thing. * * * A. To the nth degree and I was very, very pleased. Q. Of course you were. You would be. Do you recall feeling that, in fact, that he had gone further than you would have required? A. I never measured it in those terms. I just felt that I was very pleased that a man who had been given a challenge or a condition didn't just fulfill it superficially but did it to an utmost. My personal respect for him in that sense went up a great deal.↩