RICHARD M. RANDICK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Randick v. Commissioner
Docket No. 6539-74.
United States Tax Court
T.C. Memo 1976-45; 1976 Tax Ct. Memo LEXIS 356; 35 T.C.M. (CCH) 195; T.C.M. (RIA) 760045; February 24, 1976, Filed Marvin D. Brody, for the petitioner. Steven S. Brown, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency of $489 in petitioner's income and self-employment taxes for the calendar year 1971. At issue is whether petitioner is entitled to deduct certain expenses incurred for tuition, books, meals *357 and lodging, and travel by automobile because the costs were ordinary and necessary expenses of his trade or business. [1]
FINDINGS OF FACT The parties have filed a stipulation of facts which, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner, Richard M. Randick, resided in Chicago, Illinois, at the time he filed his petition in this case. During the years 1970 and 1971, petitioner was in the process of completing his legal education. In June of 1970, he received a J.D. degree from John Marshall Law School in Chicago, which he had been attending up to that time. While at John Marshall Law School he did some work as a part-time law clerk for an attorney for which he received $314 in 1970. He was not employed during the summer following his graduation from law school; instead, he studied for the Illinois bar examination which he took in August of 1970. He was admitted to the Illinois bar on November 24, 1970. Meanwhile, sometime in February or March of 1970, while still a student at John *358 Marshall Law School, petitioner had applied for admission to the graduate law program in taxation of the University of Miami, Coral Gables, Florida. He was accepted into that program in July, 1970, the month before he took the Illinois bar examination. In September, 1970, some two months before being admitted to the Illinois bar, petitioner went to Florida to begin his post graduate education. Petitioner remained in Florida (apart from vacation time) from September, 1970, until some time in June of 1971. He was graduated from the University of Miami with an LL.M. degree in taxation in June, 1971, and later that month he returned to Chicago. Most of the 1971 expenses, the deductibility of which is here in question, are associated with petitioner's stay in Florida during the first five or six months of that year while he was still a student at the University of Miami. In September, 1971 (after his return to Chicago), petitioner took the Florida bar examination and was admitted to the Florida bar on November 19, 1971. In order to obtain some funds to assist in defraying his graduate law school expenses petitioner did some part-time work while a student at the University of Miami. *359 His Florida earnings in 1971 consisted of $475 as wages for services as a tax return preparer for Continental Tax Service, in Miami, Florida; $450 in fees for preparing tax returns in his apartment in Florida; and $75 for legal research performed for the University of Miami Legal Research Bureau. His work as a tax return preparer was performed between the early part of January and April 15, 1971; it was not "legal work", and the other persons who prepared tax returns at the Continental Tax Service were not lawyers. While with his parents in Chicago during the Easter vacation in 1971, petitioner represented them at the closing of their purchase of some property. The sales price was $42,500, and petitioner received $450 from his parents which he treated as a legal fee for such services. The foregoing are the only items of income which petitioner earned for services he performed in 1971 prior to the completion of his education at the University of Miami. Upon returning to Chicago in June, 1971, petitioner was unable to obtain gainful employment. At some time thereafter, not clearly shown in the record, he entered into an arrangement with two other young attorneys under the name *360 of Cachor, Dwyer and Randick. However, there was no genuine partnership between petitioner and the other two attorneys, Cachor and Dwyer. Cachor and Dwyer paid all the expenses of maintaining the office, and they received all the income generated therefrom in 1971. In exchange for his right to use the office to consult with any clients whom he might attract on his own, petitioner did some legal research for Cachor and Dwyer, and, in addition, he remained in the office "at certain times when they wouldn't be there" in order to "handle phone calls". Apart from some compensation in respect of work relating to his parents' property, described hereinafter, the only items of income earned by petitioner during the remainder of 1971 after returning to Chicago in June of that year were a $175 fee for a real estate closing in November and a $425 fee in connection with a real estate tax assessment reduction matter in November or December. The record does not disclose any details about these two items. As noted above, when petitioner returned to Chicago in June of 1971 he was unable to obtain gainful employment, and for the entire summer he worked around the building which his parents had *361 purchased earlier that year. Although he characterized that activity as being that of a "manager", he was in fact performing physical labor such as "painting, fixing of exterior porches, painting inside, decorating, painting of windows, fixing of roof". He was not supervising anyone or engaging in any managerial functions; he was merely performing semi-skilled labor on the building. However, he did handle some eviction notices and also drew up some leases. In the income reported by him for 1971 there was included $1,500 purportedly paid to him by his parents [2] for his work in respect of the property. He estimated that $1,000 of that amount was for his physical labor and the remaining $500 was for the other services. In his 1971 return petitioner deducted $1,000 for tuition expenses (described in the return as "Advanced Education") and $40 for books used in his courses. The record discloses tuition payments in 1971 by him or on his behalf only in the amount of $803 in February, 1971, to the University of Miami [3] and $175 in December, 1971, to Loyola University of Chicago. The payment to Loyola was made in connection with his attending Loyola University *362 to "major in accounting" in its Graduate School of Business. The Commissioner disallowed the deduction of the entire $1,040 claimed by petitioner as education expense on the ground that it had not been established that it represented an "ordinary and necessary business expense". The Commissioner's second adjustment now in controversy is his disallowance of deductions in the amount of $1,145.52, described as "Meals and Lodging", on the ground that it had not been establised that these expenditures were "ordinary and necessary business expenses". This item was reflected in petitioner's 1971 return in two components: (a) "Rents" in the amount of $665.52, which represented *363 petitioner's share of the rent and utilities in respect of an apartment in Key Biscayne, Florida, which he occupied with another person while he was a student at the University of Miami in 1971; and (b) "Food" in the amount of $480, which represented petitioner's estimate of his cost of food during that period, computed at the rate of $20 a week for 24 weeks. The third and final adjustment now in controversy relates to petitioner's claimed deduction for automobile expense in the aggregate amount of $2,516.50. The great bulk of the mileage involved in this claimed deduction related to petitioner's travel to and from Florida and to his extensive daily travel within Florida. His Key Biscayne apartment was 19 miles distant from the law school in Coral Gables and 17 miles distant from Continental Tax Service in Miami. He made two daily roundtrips from his apartment to the law school throughout his period of enrollment in 1971, as well as one daily roundtrip from his apartment to Continental Tax Service during the period from early January to April 15, 1971. The Commissioner allowed only $217.44 of the total of $2,516.50 claimed by petitioner, and disallowed the deduction of the remaining *364 $2,299.06, again on the ground that it had not been established that the amount disallowed represented an "ordinary and necessary business expense". OPINION Section 162(a), I.R.C. 1954, permits a taxpayer to deduct as ordinary and necessary business expenses certain amounts which he pays for his own education. Section 1.162-5, Income Tax Regs. Properly deductible educational expenses may include not only expenditures for tuition and books, but also amounts spent for travel and meals and lodging while the taxpayer is away from home. Section 1.162-5(e)(1), Income Tax Regs. However, no espenses may be deducted pursuant to section 162(a) unless they are "paid or incurred during the taxable year in carrying on a trade or business."Arthur M. Jungreis,55 T.C. 581, 588. The requisite nexus is defined by sections 1.162-5(a)(1) and (a)(2), subject to the specific limitations of sections 1.162-5(b)(2) and (b)(3).[4] In the case before us, petitioner has failed in the first instance to establish the *365 link required by section 1.162-5(a) between his Florida expenses and any "trade or business" carried on by him, and we therefore need not consider whether the deductions are in any event precluded by section 1.162-5(b). *366 Petitioner claims that during the tax year 1971 he was carrying on three businesses: attorney at law, tax return preparer, and "manager". To be entitled by section 162(a) to deduct his educational expenses, he must show that they were proximately related to one or more of these three occupations. We cannot find that any of petitioner's Florida expenses are deductible. It is clear to us on this record, notwithstanding petitioner's often less than fully candid testimony, that his education at the University of Miami was merely a continuation of a basic program of study of the law, with emphasis on the law of taxation, which he had undertaken at John Marshall Law School. He was a student at John Marshall when he applied for admission to the University of Miami, and he in fact began his studies in Florida prior to being admitted to the Illinois bar. We are satisfied that while petitioner was attending the University of Miami he was still a law student and had not yet become a practicing attorney. N. Kent Baker,51 T.C. 243. His educational expenses in Florida were not proximately related to any conduct of a legal practice. The fact that petitioner was admitted *367 to the Illinois bar in November, 1970, does not mean that he was carrying on the practice of law during the first five or six months of 1971 when he was a student at the University of Miami. It is a long established rule that being a member in good standing of a profession is not the same as carrying on that profession for the purposes of section 162(a). Henry G. Owen,23 T.C. 377; John C. Ford,56 T.C. 1300, 1304, affd. 487 F. 2d 1025 (C.A. 9); Peter G. Corbett,55 T.C. 884, 887. Throughout 1970, petitioner was a full-time law student, from January through June as a candidate for his J.D. degree, and then from September through December, as a post-graduate student at the University of Miami. Petitioner did not work as a lawyer during his 1970 summer vacation, choosing instead to prepare himself for the Illinois bar examination. This lack of employment as a member of the bar during the interval between the completion of his under-graduate legal education and the commencement of his graduate studies in taxation obviously *368 differentiates this case from Albert C. Ruehmann III,T.C. Memo. 1971-157, 1971 P-H T.C. Memo. par. 71,157, 30 T.C.M. 675, upon which petitioner heavily relies. Petitioner remained a full-time law student through June of 1971 as he pursued his graduate studies at the University of Miami. During this time he did earn $925 preparing income tax returns, and $75 performing legal research. But these activities do not amount to the practice of law as a business, rather, they are properly viewed as merely incidental to petitioner's major goal of fulfilling his general educational objectives. N. Kent Baker,supra,51 T.C. at 247. Petitioner himself recognizes that his work as a tax return preparer did not amount to the practice of law, and his obviously minor efforts in doing legal research in Florida hardly qualified as carrying on a legal practice, particularly since he was not then even a member of the bar of the state where such work was being performed. Nor did petitioner's handling of a single real estate transaction for his parents in Illinois -- during his Easter school vacation -- put him in the "business" of practicing law in that state; and, in any *369 event, his Florida educational expenses were in no way related to that lone transaction. Whether he subsequently began to practice law, after returning to Chicago in June, 1971, is wholly irrelevant here. The point is that he was not carrying on a legal practice prior thereto, that he was merely a student in the process of fulfilling his general educational objectives, and therefore the costs of his educational program were not ordinary and necessary business expenses, but rather were either capital in nature or were personal expenses that are nondeductible in accordance with the specific command of section 262. [5]
Accordingly, we hold that all of the so-called Florida educational expenses [6] are not deductible on any theory that they were related to petitioner's alleged business of carrying on the practice of law. *370 Nor are the Florida educational expenses deductible by reason of petitioner's business activities as a "tax return preparer" or as a "manager". His work as a "tax return preparer" was merely incidental to his schooling at the University of Miami. He did it to help defray the cost of his education. He did not incur the educational expenses in order to assist him in preparing returns. The motivation was the other way around. Similarly, there is absent here a showing that there was the necessary proximate relationship between the Florida educational expenses and petitioner's work during the summer of 1971 in connection with his parent's property, which he euphemistically described as that of a "manager". We find no real or meaningful connection between petitioner's education at the University of Miami and the activities revolving around his parent's property. We are somewhat more troubled by the $175 which petitioner paid as tuition to Loyola University in December, 1971. Conceivably, the cost of taking one or several courses in accounting could be sufficiently related to the practice of law as to justify the claimed deduction. And there is evidence in this record that petitioner *371 did make some beginnings towards establishing a legal practice in the latter part of 1971. But the difficulty here is that the record is entirely too sparse in respect of petitioner's education at Loyola. There is before us a catalog of Loyola's Graduate School of Business, which sets forth in some detail a prescribed curriculum leading towards the M.B.A. degree. But the record affords us very little insight into the nature of his overall program at that institution or into petitioner's motives in enrolling there, although he did testify that he attended Loyola "to major in accounting in Graduate School of Business in order to become more proficient in accounting skills". Was he a candidate for a degree? Would such degree qualify him for a new trade or business? Was petitioner pursuing a program of education leading perhaps to his qualifying as an accountant? The answers to these and other troubling questions are not to be found in the evidence. Quite possibly, the answers to these questions might operate to preclude the deduction by reason of the provisions of section 1.162-5(b) of the Regulations, see fn. 4, supra. The burden of proof is upon the petitioner, Welch v. Helvering,290 U.S. 111; *372 Tax Court Rules of Practice and Procedure, Rule 142(a), and we cannot find that it has been carried here. In the circumstances, we must sustain the Commissioner's disallowance of the deduction of this item. Finally, petitioner has attempted to make much of the fact that the Commissioner's determination of deficiency included $169 of self-employment tax. He contends that such tax could be justified only on the theory that he was engaged in a "trade or business", and that the Commissioner's further determination disallowing the educational expense deductions was inconsistent with the treatment of his earnings as having been derived from a "trade or business". The point is not well taken. In the first place, it is entirely proper for the Commissioner to take inconsistent positions in order to protect the revenues. And in this case, not only is the Government's contention in respect of the self-employment tax compatible with the determination disallowing the educational expense deduction, but petitioner is in no position now to raise the issue. The self-employment tax is companion legislation *373 to certain provisions of the Social Security laws which provide for substantial benefits to eligible retired persons based upon either their wages as employees or their earnings from self-employment. And it is quite possible that petitioner's earnings may qualify as having been derived from a "business" source within the meaning of the social security laws, the self-employment tax, and the ordinary income tax. The critical aspect of our holding -- as well as the justification underlying the Commissioner's disallowance of the claimed deductions -- is that they were not ordinary and necessary expenses incurred in the carrying on of any trade or business, i.e., that they were not proximately related to any of petitioner's sources of income. It is immaterial whether such sources would otherwise pass muster as "business" activities for purposes of the foregoing statutory provisions. Moreover, petitioner has not raised any issue in his pleadings that there is any error in the determination as to the self-employment tax. For obvious reasons of litigation strategy, he chose not to challenge that determination, apparently expecting that his interests would be better served by attacking *374 only the determination of the larger income tax deficiency here involved. Therefore, we do not decide whether the self-employment tax was properly imposed. We hold here simply that the contested deductions are not allowable on the record before us. Decision will be entered for the respondent.
Footnotes
1. Petitioner has conceded that he is not entitled to deduct the $240 which he paid for a bar review course and for bar examination fees.↩
2. See fn. 3, infra.↩
3. The $803 tuition payment was made by check drawn by petitioner's father, which petitioner contends represented a loan to him and which he contends he repaid from time to time in cash out of the $1,500 that he testified was paid to him by his parents for his work in respect of their property. Whether petitioner in fact made such repayment for his 1971 tuition at the University of Miami need not be determined in view of the conclusion reached hereinafter that the tuition expense is in any event nondeductible.↩
4. Sec. 1.162-5. Expenses for education. (a) General rule. Expenditures made by an individual for education * * * which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses * * * if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. (b) Nondeductible educational expenditures-- * * *
(2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. * * *
(3) Qualification for new trade or business.↩ (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. * * *
5. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal * * * expenses.↩
6. These include books, tuition, meals and lodging, and travel. As to the latter, petitioner claimed a deduction of $2,516.50, and the Commissioner disallowed all of it except $217.44. Petitioner was not entitled to any deduction for travel in respect of his studies at the University of Miami, and the record fails to show that petitioner incurred any deductible automobile expenses in 1971 after he returned to Chicago in June of that year in excess of the amount allowed by the Commissioner. We thus find it unnecessary to consider other possible grounds for disallowing this deduction in whole or in part, such as the extent to which the travel involved nondeductible commuting expense, as well as petitioner's failure to provide the substantiation required by section 274.↩