DISTRIGAS OF MASSACHUSETTS CORPORATION, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent.

CAPE COD GAS COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent.

Nos. 74–1369, 74–1370.

United States Court of Appeals, First Circuit.

Argued March 5, 1975.

Decided June 3, 1975.

William R. Connole, Washington, D. C., with whom Eugene E. Threadgill, Connole & O'Connell, Washington, D. C., Walter F. Greeley, Edwin S. Nail, Ronald E. Lubowicz, Boston, Mass., Sherman S. Poland and Ross, Marsh & Foster, Washington, D. C., were on brief, for petitioners.

William J. Grealis, Atty., Washington, D. C., with whom Drexel D. Journey, Gen. Counsel, and George W. McHenry, Jr., Sol., Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

Two gas companies seek review of an order of the Federal Power Commission denying a request for preclearance for a transaction, and directing compliance with section 7 of the Natural Gas Act, 15 U.S.C. § 717f(c). The companies had requested the Commission to rule that a proposed sale, transportation, and storage of liquefied natural gas (LNG)[1]

within Massachusetts would be outside FPC jurisdiction or, alternatively, would be exempt from most regulation under an FPC rule relating to emergency sales of gas. If the transaction were nonjurisdictional or exempt, petitioners would avoid the uncertainties and delays which accompany an application to the Commission for a certificate of "public convenience and necessity". *Id.*

Cape Cod Gas Company, a local Massachusetts distributor exempt from FPC jurisdiction under sections 1(b) and 1(c) of the Act,[2] learned from its interstate pipeline supplier that because of the nationwide gas shortage Cape would receive less than enough gas to meet its requirements for the 1974–75 winter. At the same time Commonwealth Gas Company, a distributor also exempt under section 1(c), had a surplus of natural gas, which had been purchased from the Tennessee Gas Pipeline Company and liquefied and stored by Hopkinton LNG Corporation, an affiliate of Commonwealth. Cape proposed to purchase 500,000 McF (one McF = 1000 cubic feet) of LNG from Commonwealth, taking delivery at the Hopkinton facilities and (since Cape's own storage facilities were inadequate) trucking the LNG to storage facilities of Distrigas of Massachusetts Corporation (DOMAC). During the 1974–75 winter Cape was to have the LNG shipped by truck to its distribution system from the DOMAC facilities.

---

1. Counsel for petitioner informs us that gas in vapor form is liquefied by reducing its temperature to $-259°$F, and that in liquid form natural gas occupies 1/614 its former space.

2. Section 1(b), 15 U.S.C. § 717(b), provides,
   "The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."

Section 1(c) provides,
   "The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulations by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulations by the several States. . . ."

On April 12, 1974, DOMAC filed with the Commission a request for a preclearance that this transaction, and in particular its own storage facilities, would not be subject to FPC jurisdiction. On May 31, Cape requested a Commission determination as to whether the entire transaction was outside FPC jurisdiction or should be made under section 2.68 of the Commission's General Policies and Interpretations, 18 C.F.R. § 2.68, which exempts from full FPC regulation emergency sales for up to sixty days by 1(c) companies, distribution companies, and intrastate pipelines. On August 9, the Commission denied the requests. It ruled that although the Commonwealth to Cape sale was exempt from FPC jurisdiction under section 1(c) and although the Hopkinton-DOMAC-Cape transportation of the LNG by truck was exempt under FPC Order No. R–377, 49 F.P.C. 1078 (1973), the storage services by Hopkinton and DOMAC nevertheless remained subject to FPC jurisdiction. The Commission also ruled that section 2.68 was applicable only to sales of gas in vapor form, and not to this LNG transaction. The Commission denied rehearing and reconsideration, and this petition followed.

## I.  FPC JURISDICTION

Petitioners contend that since the sale and transportation involved in this transaction are admittedly exempt from FPC jurisdiction, the Commission erred in concluding that the operations of Hopkinton and DOMAC in the same transaction were jurisdictional. It is petitioners' view that since the interstate transportation of LNG by truck is nonjurisdictional, the storage and transportation of LNG intrastate ought to be nonjurisdictional and outside the provisions of section 1(b). Petitioners would have us find support for their position from the express declaration in section 1(c) that sales exempt under its provisions are "matters primarily of local concern". See note 2 supra.

In terms of common sense, there is much to be said for petitioners' view.

By asserting jurisdiction over the storage facilities in this proposed transaction, the Commission has in effect placed an otherwise exempt transaction under its regulation. Moreover, the Commission has not explained how its statutory functions are served by regulating such a transaction when storage rather than distribution follows an intrastate exempt sale.

But while common sense may be on the side of petitioners, the Act, as worded and construed, supports the Commission. The FPC has jurisdiction over all companies involved in the transportation or sale of gas in interstate commerce until the gas reaches local distribution, unless the company is exempt under the Act. See generally FPC v. East Ohio Gas Co., 338 U.S. 464, 70 S.Ct. 266, 94 L.Ed. 268 (1949); Panhandle Eastern Pipe Line Co. v. Public Service Commission, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128 (1947); cf. Illinois Gas Co. v. Public Serv. Co., 314 U.S. 498, 62 S.Ct. 384, 86 L.Ed. 371 (1942). Here, the exempt status of the Commonwealth-Cape sale does not control whether the storage companies engaged in the transportation of natural gas in interstate commerce within the meaning of section 1(b). The gas supplied to Commonwealth originally moved interstate through pipelines before liquefaction and storage at Hopkinton, and petitioners have not shown that the Hopkinton and DOMAC facilities are exempt under section 1(b) or 1(c).

FPC jurisdiction over this transaction might seem to be at odds with the fact that Commonwealth's use of Hopkinton's liquefaction and storage facilities leading to direct distribution is exempt under section 1(c). The proposed storage for Cape is different only in that the gas must be transported intrastate to Cape's facilities prior to local distribution. Nevertheless, we cannot say that the Commission erred in holding this difference to be crucial, in view of the Supreme Court's expansive view of transportation of interstate gas as not necessarily ending when the gas enters the state of ultimate consumption. See Cali-

*fornia v. LoVaca Gathering Co.,* 379 U.S. 366, 85 S.Ct. 486, 13 L.Ed.2d 357 (1965); *East Ohio, supra.* While Hopkinton and DOMAC would not physically transport the gas in the proposed transaction, they would be part of the interstate movement of the gas to the point of ultimate consumption.

We find, therefore, no error in the Commission's assertion of jurisdiction.

## II. APPLICABILITY OF SECTION 2.68

■ Section 2.68 of the Commission's General Policies and Interpretations was promulgated in 1970 to permit and encourage certain exempt companies to make emergency sales of gas with only minimal FPC regulation in the form of reporting requirements. 18 C.F.R. § 2.68, Orders No. 402, 402(a), 43 F.P.C. 707, 822 (1970). The Section specifies "natural gas" and does not on its face exclude LNG, which of course is natural gas within the meaning of the Act generally. *See* Part I *supra.*

Nonetheless, giving as its reason that section 2.68 was not meant to cover LNG, the Commission refused to allow petitioners to invoke the Section with respect to the transaction in question. The Agency now argues that while the 60-day limit on emergency sales had some meaning in the case of vaporous gas traveling through pipelines at a regular rate, it could be circumvented too easily by large shipments of LNG.[3] It has not, however, made any effort to amend section 2.68 to exclude LNG transactions.

■ If this interpretation had been enunciated and applied with consistency by the Agency, we would no doubt support it—even in the absence of an amendment to the section. Congress has

delegated decisions of this character to the expertise of the Commission, and while we might be troubled by the failure of the Commission, once having promulgated a rule, to foreshadow in an amendment any exception for LNG, we would not for that reason alone interfere with the Agency's determination. Indeed, so long as the instant decision fitted in with any pattern of interpretation that seemed fair and rational we would tend to sustain it. Such might be the case had the Commission first applied section 2.68 to LNG transactions but later, in light of further experience or a change in policy, adopted an opposite approach. In *NLRB v. Wentworth Inst.,* 515 F.2d 550 (1st Cir. 1974), we recently upheld the authority of the National Labor Relations Board to reverse, after many years, a major policy determination of its own. Agencies no less than courts are entitled to reconsider their policies and views.

■ But what we are faced with here is something different from either rational interpretation or reconsideration. While the Agency has broad powers to regulate, and in so doing to choose between rulemaking and individual decisional processes, it also has a duty to define and apply its policies in a minimally responsible and evenhanded way. Insofar as we can determine from the Agency's other rulings, its interpretation of section 2.68 with respect to LNG transactions has been entirely fickle and capricious. The Commission has construed the regulation in other instances in precisely the opposite manner from here. Thus it has authorized applying section 2.68 to LNG transactions in letter rulings issued before at about the same time, and after the contrary ruling in this case.[4]

---

**3.** The Agency has also argued, less convincingly, that LNG's special characteristics present a safety hazard requiring closer Commission control. In view of the Commission's own determination that the trucking of LNG is beyond its authority to regulate, this argument is scarcely convincing.

**4.** *Valley Gas Co.,* No. R–386 (April 18, 1974); *American LNG Co.,* No. R–386 (April 18, 1974); *Boston Gas Co. & Providence Gas Co.,* No. R–386 (May 31, 1974); *Commonwealth Gas Co.,* No. R–386 (July 5, 1974); *Piedmont Nat'l Gas Co.,* Nos. G–8110 & R–386 (Jan. 30, 1975). *But see Associated Gas Distributors* (no docket number) (March 3, 1975).

The Commission's decision with respect to petitioners indicated that it regarded the letter rulings as "factually distinguishable" as well as of little precedential significance. But the Commission has presented no information as to how or why those cases differed from the instant ones. Each of the other cases involved an LNG sale under section 2.68, which in the instant cases were held to be inapplicable because it was an LNG transaction.[5] The letter rulings carried the force of law, and the Commission is not free to set policies in formal decisions and then vary from the policies in less formal rulings involving the same situation. The Commission's vacillating in applying section 2.68 has resulted in inconsistent treatment of similarly situated parties to the detriment of petitioners.[6]

In the circumstances, we think the Commission was not free to interpret section 2.68, as now worded, to exclude LNG transactions. Given the wording of the Section and the Commission's failure to establish in practice any coherent pattern of interpretation excepting LNG, we think fairness and consistency require that section 2.68 be applied according to its plain words and the Agency's more frequently espoused view of it. Thus we vacate the Commission's ruling in petitioners' cases, and remand for reconsideration in light of our holding that section 2.68, as now worded, is not to be read as excluding the subject transactions merely because LNG was involved. 15 U.S.C. § 717r.

If with respect to future transactions the Commission wishes to exclude LNG from the operation of section 2.68, it may do so by promulgating a new or revised rule setting forth its policies with sufficient clarity to ensure evenhanded treatment.[7]

Reversed and remanded for proceedings in accordance with this opinion.

---

5. We regard as without merit the Commission's further explanation for excluding the transaction from section 2.68—that Hopkinton and DOMAC were interstate, jurisdictional companies and not the exempt companies contemplated by the Section. In addition to being inconsistent with the Commission's view in the *Valley* case, note 4 *supra*, this explanation flies in the face of the Section's explicit exemption of jurisdictional transporters for qualified sellers of gas during emergency shortages.

6. The Commission contends that petitioners have no basis for reliance on its prior application of section 2.68 to LNG transactions, because its February 22, 1974, order in another Distrigas case, No. CP 74–212, declared a policy to exclude LNG transactions from section 2.68, and petitioners were on notice of this order. Petitioners point out that the February 22 order declared that 18 C.F.R. §§ 157.22, 157.29, relating to emergency sales by pipeline companies and independent producers, do not include LNG transactions and explicitly distinguished the orders adopting section 2.68. Since the Commission applied section 2.68 to LNG transactions after both the February 22 and August 9 orders, we think the latter order involves inconsistent, arbitrary treatment, regardless of the scope of the February 22 order and the arguably retroactive nature of the later order.

7. The notice and comment procedures required for informal rulemaking may be dispensed with if the Commission finds compliance to be "impracticable, unnecessary, or contrary to the public interest". 5 U.S.C. § 553(b).