BERNARD E. TEICHGRAEBER, ET AL.,[1] PETITIONERS *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7591-74—7594-74.   Filed June 19, 1975.

*Elliot Ira Miller,* for the petitioners.
*Thomas E. Bulleit,* for the respondent.

### OPINION

DAWSON, *Chief Judge:* Petitioners' motion for an order to produce documents was assigned to and heard by Commissioner Randolph F. Caldwell, Jr. The Court agrees with and adopts his opinion which is set forth below.[2]

### OPINION OF THE COMMISSIONER

These cases are presently before the Court on petitioners' motion for an order to produce documents, filed on January 17, 1975. Oral argument has been made by counsel for the parties and they have filed memoranda in support of their respective positions.

Petitioners' motion seeks production of the following:

Any private letter rulings, including but not limited to any rulings issued to Bache & Co., with respect to attempts by stock and securities brokerage firms to deduct conversion losses, bad debts or similar losses and which discuss the deductibility of such losses or the standards for determining the appropriate year for the deduction thereof.

---

[1] Cases of the following petitioners have been consolidated herewith: Estate of Barbara G. Teichgraeber, deceased, Bernard E. Teichgraeber and Richard F. Teichgraeber, Executors, docket No. 7592-74; Bernard E. Teichgraeber and Estate of Barbara G. Teichgraeber, deceased, Bernard E. Teichgraeber and Richard F. Teichgraeber, Executors, docket No. 7593-74; Richard F. Teichgraeber and Winifred M. Teichgraeber, docket No. 7594-74.

[2] Since this is an interlocutory motion for purpose of discovery, the Court has concluded that the posttrial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in these particular circumstances. This conclusion is predicated upon the authority of the "otherwise provided" language of that Rule.

Petitioners Bernard and Richard Teichgraeber (son and father) were general partners in the brokerage firm of Thomson & McKinnon. Bernard's late wife, Barbara, was a limited partner. Bernard and Barbara terminated their partnership interest in April 1967, while Richard terminated his interest on December 31, 1967.

On its partnership return for 1967, Thomson & McKinnon claimed a deduction for "conversion errors" of $1,343,740. Respondent disallowed that deduction on audit of the partnership's return and increased petitioners' distributive shares of partnership income accordingly. Petitioners' counsel represents that the respondent proposed to allow the deduction for the succeeding year, 1968. Petitioners' counsel further represents that such treatment was agreeable to the remaining partners in Thomson & McKinnon, but not to his clients (petitioners in these cases) for the reason that in 1968 they were no longer members of the firm and thus could not benefit by the deduction if allowed for 1968.

In the course of the administrative proceedings within the Internal Revenue Service, an appellate conferee told petitioners' representative that the "conversion errors" issue had been considered and a ruling had been issued with respect thereto, in connection with Bache & Co., another brokerage house. According to petitioners' counsel, the conferee said that the "ruling was clear, that [it] set forth the standards and criteria for the disallowance of the conversion loss, and its application was clear here and in fact would indicate that we really hadn't much of a case to begin with." When petitioners' counsel asked the conferee to furnish a copy of the Bache ruling, the latter replied that he was unable to do so.

After the present cases were begun, petitioners' counsel requested that respondent furnish him with "copies of any private letter rulings, including the ruling obtained by Bache & Co., in connection with attempts by stock and security brokerage firms to deduct conversion losses, bad debts, or similar losses, which discuss the deductibility of such losses and the standards for determining the appropriate year for the deduction thereof." Respondent refused to produce, and the present motion to compel production was filed.

At the hearing it appeared that there had not been a private letter ruling to Bache & Co. Rather, a Technical Advice Memo-

randum had been issued. Respondent's counsel, resisting efforts to compel him to produce anything, did not advise the Court whether any private rulings had been issued. However, respondent's counsel has since tendered to the Court, for inspection in camera, the Technical Advice Memorandum regarding Bache & Co., as well as the revenue agent's request therefor.

The questions presented are (1) whether such Technical Advice Memorandum (hereinafter TAM) is discoverable; and (2) whether the private rulings, if there are any, as described in the above-quoted portion of petitioner's motion to compel, are discoverable.

1. *The TAM.*—In our opinion, this document is not subject to discovery. In *Tax Analysts & Advocates v. I.R.S.*, 505 F.2d 350 (C.A.D.C. 1974), the Court of Appeals held that technical advice memoranda of the same type as is involved here, were exempted from disclosure under section 522(b)(3) of the Freedom of Information Act. In this case, we will follow the Court of Appeals, and hold that the TAM is not discoverable for the same reason that the Court of Appeals held that kindred technical advice memoranda were exempt from disclosure. In so holding, we are not implying that because material is exempt from disclosure under the Freedom of Information Act, it will necessarily follow that it is not subject to discovery under the Tax Court Rules of Practice and Procedure.

Petitioners' motion to compel production of the TAM is therefore denied.

2. *The private letter rulings.*—Rule 70(b) defines the scope of discovery in the Tax Court: "The information or response sought through discovery may concern any matter not privileged and which is relevant to the subject matter involved in the pending case." We do not believe that the private letter rulings are privileged, within the meaning of the Rule, nor do we believe that they are cloaked with the qualified privilege of "work product" under such cases as *Hickman v. Taylor,* 329 U.S. 495 (1947). They do not appear to have been prepared in anticipation of litigation, but rather as responses to taxpayers' requests for the views of the Service with respect to contemplated transactions. Indeed, in the *Tax Analysts* case such rulings were required to be furnished under the Freedom of Information Act.

The more difficult question is whether such rulings are "relevant to the subject matter involved in the pending case," as Rule 70(b) requires.

Petitioners assert that relevance lies in their claim, presented in an amendment to their petitions, that the respondent may be seeking in the present cases to treat petitioners differently from the way he has treated, or proposed to treat, other stock brokerage firms or the member-partners thereof. Petitioners assert that the requested rulings are needed to determine if, in fact, there has been such a difference which would amount to discrimination against petitioners and render the deficiencies in the instant case arbitrary.

The private letter rulings could be evidence in support of that position, and as such would have the necessary relevance. However, upon reflection, we are now convinced that such position raises a false issue. Even if it be assumed that a private letter ruling had been issued to another brokerage house or one of its partners which proposed a different, even inconsistent, treatment than that accorded to petitioners in these cases, that circumstance would not render the respondent's determination here arbitrary. In numerous cases, it has been held that where the Commissioner has issued a private ruling to one taxpayer, another taxpayer (who has not received a ruling) may not rely on the holding in the issued ruling so as to require that he be given the same treatment that the first taxpayer was accorded. *Weller v. Commissioner*, 270 F.2d 294 (3d Cir. 1959); *Carpenter v. Commissioner*, 322 F.2d 733 (3d Cir. 1963); *Bornstein v. United States*, 345 F.2d 558 (Ct. Cl. 1965); *Knetsch v. United States*, 348 F.2d 932 (Ct. Cl. 1965); *Shakespeare Co. v. United States*, 389 F.2d 772 (Ct. Cl. 1968); *Goodstein v. Commissioner*, 267 F.2d 127 (1st Cir. 1959). We are not persuaded that petitioners in the present cases could rely on the private rulings they seek (if indeed there have been any). It is therefore questionable whether any such rulings would, in any event, be relevant to petitioners' cases.

Petitioners rely upon the Court of Claims opinion in *International Business Machines Corp. v. United States*, 343 F.2d 914 (Ct. Cl. 1965), and *Queen's Way to Fashion, Inc. v. United States,* a report of a trial judge of the Court of Claims, 74-9 C.C.H. par. 7905. Each of those cases is distinguishable on its facts. The Court of Claims appears to have confined the IBM case

strictly to its facts; and the Court sitting en banc on the Government's motion to review the trial judge's order in *Queen's Way,* vacated the same 3 months after it was issued. 204 Ct. Cl. 836.

It is true, as mentioned above, that the Court of Appeals for the District of Columbia Circuit in *Tax Analysts & Advocates v. I.R.S., supra,* required that the plaintiff be furnished copies of private letter rulings. And it may be that petitioners could obtain the rulings they seek here in a Freedom of Information Act case brought in the District Court, the court having jurisdiction over such actions. However, in the Tax Court, where they are seeking discovery, they must meet our Rule 70(b) requirement of relevance; and for the reasons set out above, we believe that they have not done so. It is unnecessary to, and we do not, pass upon respondent's objection that it would be administratively inconvenient for him to locate the rulings which petitioners seek.

Petitioners' motion to compel production of the private letter rulings is likewise denied.

*Appropriate orders will be entered.*