KENNETH C. DAVIS AND INGER P. DAVIS, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4208-73.     Filed February 23, 1976.

Kenneth C. Davis, pro se.
*Alan M. Jacobson,* for the respondent.

OPINION

SIMPSON, *Judge:* The Commissioner determined a deficiency of
$588.05 in the petitioners' Federal income tax for 1969. One
issue has been conceded by the petitioners, and the only issue
remaining for decision is whether the petitioner, Inger P. Davis,
may deduct expenditures for tuition and books as business
expenses under section 162(a) of the Internal Revenue Code of
1954.[1]

All of the facts have been stipulated, and those facts are so
found.

The petitioners, Kenneth C. Davis and Inger P. Davis, husband
and wife, resided in Chicago, Ill., when they filed their petition
herein. They filed a joint Federal income tax return for 1969
with the Internal Revenue Service Center, Kansas City, Mo. Mrs.
Davis will sometimes be referred to as the petitioner.

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during
the year at issue.

The petitioner received an Artium degree in June 1948 from a school in Denmark. During the years 1950 through 1952, she was a student at the Copenhagen School of Social Work in Copenhagen, Denmark. In 1953, she was employed as a caseworker with the Child and Family Service Agency in Copenhagen. For the next 6 years, 1954 through 1959, the petitioner worked for the Ministry of Labor and Social Affairs in Copenhagen, where she was primarily engaged in research in the field of social work. Her work at the Ministry secondarily involved library administration in social work. In addition, during the years 1957 through part of 1961, she was a part-time lecturer or lecturer at the Copenhagen School of Social Work.

In 1961, the United Nations granted the petitioner a fellowship for 1 year of study in the United States in the field of social work education and training. Thereupon, she came to the United States and enrolled in the School of Social Service Administration at the University of Chicago seeking a master's degree in social work. She obtained such degree in June 1962.

After the petitioner finished her period of training in the United States, she was under an obligation to return to the Copenhagen School of Social Work and resume her position as lecturer. However, in June 1962, she married Mr. Davis and accordingly worked out an arrangement to satisfy her employment obligations to such school by agreeing to give two seminars in Copenhagen and by writing a textbook for social work students in Denmark. She gave the first seminar in September 1962, and the second, in June 1963. After the first seminar, she commenced writing the textbook and completed it by the end of 1963. The textbook was published in 1964 by the Copenhagen School of Social Work under the title "Socialraadgivning—Teori og Metodik" (Social Work—Theory and Methods).

From September 1964 to March 1965, the petitioner worked for the School of Social Service Administration at the University of Chicago. Although her title was research assistant, she did no research. Her work was primarily that of a teaching assistant; she did a substantial amount of teaching by herself, in addition to assisting a professor at the school.

The petitioner wished to enter the doctoral program at the University of Chicago, and she understood that it would be necessary for her to acquire some casework practice before she could be admitted. She secured a position as a caseworker with

the Chicago Child Care Society in October 1965 and continued performing such work on a full- or part-time basis until July 1967. At that time, she resigned such position so that she could enroll as a full-time student in the Ph.D. program at the School of Social Service Administration, even though the Child Care Society did not require her to obtain such degree. In her application for admission to such program, she stated that she would "probably not" return to her casework position, but planned some combination of research and teaching as her future employment.

The primary purpose of the graduate program in social work, offered by the School of Social Service Administration at the University of Chicago, was to train students for teaching and research in social work. The program was not designed to give advanced training to caseworkers.

The petitioner was enrolled in the Ph.D. program from September 1967 until December 1972, when she received her Ph.D. From July 1, 1967, until October 1, 1971, she was unemployed; she spent this time pursuing her graduate studies as a full-time student. Beginning in October 1971 and continuing through June 1973, she was employed as a lecturer in the School of Social Service Administration. Such position was a nonfaculty academic position.

On October 1, 1973, the petitioner was hired as an assistant professor by the School of Social Service Administration, a position she still held at the time of the trial of this case. An assistant professorship is a full-time faculty position, and it is the general policy of the School of Social Service Administration to require a Ph.D. degree of a faculty member, although there are some exceptions.

On October 4 and November 20, 1974, the petitioner, Kenneth C. Davis, wrote to the Internal Revenue Service seeking access to the following materials based upon the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552:

(1) An index of interpretations adopted by the IRS;

(2) Interpretations by the IRS bearing on the question of the deductibility of expenses incurred by one in getting a Ph.D. in 3 years; and

(3) Information about the cases involved in Rev. Rul. 68-580, 1968-2 C.B. 72.

The Chief of the Disclosure Staff of the IRS replied to Mr. Davis by letter dated March 5, 1975, stating that as of that date it was the position of the IRS that such information was exempt from disclosure because of several exemptions contained in the Freedom of Information Act. Mr. Davis then appealed from this determination to the Commissioner of the IRS by letter dated March 24, 1975. On April 23, 1975, the Commissioner denied the appeal of Mr. Davis, citing the same reasons given by the Chief of the Disclosure Staff. The Commissioner also informed Mr. Davis that he could seek judicial review of his determination in a United States District Court. There is no evidence of record in this case that Mr. Davis has sought judicial review of the Commissioner's determination. Nor is there any indication that Mr. Davis has sought discovery of such information in accordance with the Rules of Practice and Procedure of this Court.

The Commissioner, in his notice of deficiency, disallowed the petitioner's deduction in the amount of $752 for books and tuition on the ground that such expenditures are not ordinary and necessary business expenses, but are rather nondeductible personal expenses. The petitioners filed a timely petition with this Court seeking a redetermination of the deficiency determined by the Commissioner.

We must decide whether the petitioners may deduct educational expenses for the year 1969 under section 162(a), which allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Although section 162 does not specifically deal with the deductibility of educational expenses, the Treasury regulations do provide useful guidelines with respect to such expenditures. See sec. 1.162-5, Income Tax Regs. Such regulations have repeatedly been approved and applied by the courts in determining the deductibility of educational expenses. See *Patrick L. O'Donnell,* 62 T.C. 781, 783 (1974); *David N. Bodley,* 56 T.C. 1357, 1361 (1971); *Arthur M. Jungreis,* 55 T.C. 581, 588 n. 6 (1970); *Jeffry L. Weiler,* 54 T.C. 398, 402 (1970); *Ronald F. Weiszmann,* 52 T.C. 1106, 1111-1112 (1969), affd. per curiam 443 F. 2d 29 (9th Cir. 1971).

The petitioners contend that Mrs. Davis' educational expenses are deductible under section 1.162-5(a)(1) of the regulations, which provides:

(a) *General rule.* Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—
(1) Maintains or improves skills required by the individual in his employment or other trade or business, * * *

In support of his position, the Commissioner argues that the petitioner's educational expenses are not deductible as business expenses because she was a full-time student and therefore was not carrying on any trade or business in 1969. Alternatively, he argues that if the petitioner was carrying on a trade or business, it was that of a caseworker and that her educational expenses come within the nondeductible categories described in section 1.162-5(b)(2) or (3) of the regulations. The petitioners, on the other hand, argue that Mrs. Davis was carrying on a trade or business during 1969, and such trade or business is said to be the field of social work. The Commissioner's first argument presents an interesting issue in the light of the facts of this case. Compare *Peter G. Corbett,* 55 T.C. 884 (1971), and *Canter v. United States,* 354 F. 2d 352 (Ct. Cl. 1965), with *Furner v. Commissioner,* 393 F. 2d 292 (7th Cir. 1968), revg. 47 T.C. 165 (1966), and *John C. Ford,* 56 T.C. 1300 (1971), affd. per curiam 487 F. 2d 1025 (9th Cir. 1973). However, we need not resolve that issue since we are of the opinion that, even if the petitioner is considered to be engaged in a business in 1969, and that business is considered to be the field of social work, her educational expenses are not deductible because they are of the type described in section 1.162-5(b)(2) of the regulations and are not ordinary and necessary business expenses under section 162.

The relevant provisions of section 1.162-5(b)(2) of the regulations are:

(2) *Minimum educational requirements.* (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. * * * The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. * * *
(ii) The minimum educational requirements for qualification of a particular individual in a position in an educational institution is the minimum level of education (in terms of aggregate college hours or degree) which under the

applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position. If there are no normal requirements as to the minimum level of education required for a position in an educational institution, then an individual in such a position shall be considered to have met the minimum educational requirements for qualification in that position when he becomes a member of the faculty of the educational institution. The determination of whether an individual is a member of the faculty of an educational institution must be made on the basis of the particular practices of the institution. * * *

Determining whether the petitioner's activities constitute a trade or business and the nature thereof for purposes of section 162(a) is a question of fact. *Morton v. Commissioner,* 174 F. 2d 302 (2d Cir. 1949), affg. a Memorandum Opinion of this Court, cert. denied 338 U.S. 828 (1949); *Peter G. Corbett, supra.* This Court has adopted a "commonsense approach" when we have been required to decide whether an educational expenditure qualified a taxpayer for a "new trade or business," and hence was nondeductible. *William D. Glenn,* 62 T.C. 270, 275 (1974); *Ronald F. Weiszmann,* 52 T.C. at 1110. If substantial differences exist in the tasks and activities of various occupations or employments, then each such occupation or employment constitutes a separate trade or business. *William D. Glenn, supra; Ronald F. Weiszmann, supra.* For example, it has been held that a licensed public accountant is in a different trade or business than is a certified public accountant. *William D. Glenn, supra.* A registered pharmacist is in a different trade or business than an intern pharmacist, even though such an intern performs many of the same tasks as a registered pharmacist, but under supervision. *Gary Antzoulatos,* T.C. Memo. 1975-327 (Nov. 5, 1975). The principles of such cases must be applied in determining what was Mrs. Davis' business and what was the effect of the education secured by her in 1969.

The situation in this case is analogous to that considered in *Arthur M. Jungreis,* 55 T.C. 581 (1970), a Court-reviewed opinion wherein we interpreted and applied section 1.162-5(b)(2) of the regulations. In that case, a teaching assistant attempted to deduct the costs of obtaining a Ph.D. degree. We held that in accordance with section 1.162-5(b)(2) of the regulations, such costs were not deductible because they were incurred to obtain a Ph.D. degree which enabled him to meet the minimum educational requirements for becoming a member of the faculty of the

educational institution. The petitioner in *Jungreis* argued that he had met the minimum educational requirements for his position in the university since he was already employed at the university. We rejected this argument because we found that, under the regulations, one has not met the minimum educational qualifications for a position in an educational institution until he is qualified to become a permanent member of the faculty. *Arthur M. Jungreis, supra* at 589.

When we consider the facts of the case now before us, it is clear that the petitioner's educational expenses were not incurred merely to maintain the skills in the work that she had been performing but were to enable her, and did in fact enable her, to meet the minimum education necessary to secure a new position as a permanent faculty member of the University of Chicago. Before she enrolled in the Ph.D. program in 1967, she had spent many years in the field of social work, and she had performed a variety of tasks in that field—she had been a lecturer, performed research, authored a textbook, and served as a caseworker. Despite the length and variety of her experience, she was not then qualified to become a member of the faculty of the University of Chicago, for she lacked the Ph.D. degree normally required of a member of such faculty. When she applied for admission to the Ph.D. program, she declared that she was doing so in order to carry on teaching and research in the field of social work. She did not need the degree to carry on the work previously performed by her, but she did need it to move up to the position as a member of the faculty at Chicago. Under these circumstances, it is quite apparent that her education in 1969 was not merely to continue the kind of social work performed by her but qualified her to meet the minimum requirements of a new position in that field. Her situation is essentially no different than that in *Jungreis* where the petitioner was already working in the general field of history, but he was pursuing additional education in order to qualify as a member of the faculty in the field of history.

Moreover, the petitioner's employment during the latter part of her Ph.D. program, and subsequent thereto, reinforces our conclusion. From October 1971, while Mrs. Davis was still working on her doctorate, until June 30, 1973, she was employed as a lecturer at the School of Social Service Administration, a nonfaculty position. Mrs. Davis obtained her Ph.D. sometime in December of 1972, and at the beginning of the next school year,

October 1, 1973, she was appointed an assistant professor at the School of Social Service Administration. An assistant professorship is a full-time faculty position. Given the petitioner's many years in various nonfaculty teaching positions, the conclusion seems inexorable that the acquisition of a Ph.D. was all that was standing between the petitioner and a full-time faculty position. Accordingly, we hold that the petitioner's educational expenses in 1969 are not deductible under section 162(a).

The petitioner, Kenneth C. Davis, who is a widely recognized and respected authority in the field of administrative law, vigorously argues that we should apply to the actions of the IRS a duty of consistency, as articulated by Judge Friendly in *Sirbo Holdings, Inc. v. Commissioner,* 476 F. 2d 981, 987 (2d Cir. 1973), vacating and remanding 57 T.C. 530 (1972), "the Commissioner has a duty of consistency toward similarly situated taxpayers." Mr. Davis recognizes that there may exist sound reasons for treating taxpayers differently, but he asserts that similarly situated taxpayers should be treated in the same manner, in the absence of an adequate explanation for a difference in treatment. He asserts that such principle has been applied to the actions of other administrative agencies and contends that it should also apply to the IRS. See *Atchison, T.&S.F.R. Co. v. Wichita Board of Trade,* 412 U.S. 800, 808-809 (1973); *Distrigas of Massachusetts Corp. v. F.P.C.,* 517 F. 2d 761, 765-766 (1st Cir. 1975); *Public Serv. Com'n, State of N.Y. v. Federal Power Co.,* 511 F. 2d 338, 353 (D.C. Cir. 1975); *Larus & Brother Co. v. F.C.C.,* 447 F. 2d 876, 879 (4th Cir. 1971); *Greater Boston Television Corp. v. F.C.C.,* 444 F. 2d 841, 852 (D.C. Cir. 1970), cert. denied 403 U.S. 923 (1971).

Under the FOIA, Mr. Davis requested the Commissioner to provide him with letter rulings relating to other taxpayers claiming a deduction for educational expenses. The Commissioner refused to disclose such rulings, but Mr. Davis has initiated no action in a District Court to seek an order under the FOIA directing the Commissioner to disclose the rulings. He contends that since the Commissioner's actions should be subjected to the duty of consistency, this Court should compel him to produce the rulings. Mr. Davis recognizes that the FOIA expressly provides that its provisions are to be enforced by the District Courts of the United States, but he asserts that the grant of such jurisdiction to the District Courts is not exclusive and

that in the interest of justice, the Tax Court should also undertake to carry out the policies of such law. He suggests that we might do so by invoking the principle of the law of evidence that if a party possesses relevant evidence and fails to produce it, the Court may infer that such evidence would be adverse to such party. 2 Wigmore, Evidence, sec. 285 (3d ed. 1940).

Mr. Davis also challenges our decision in *Bernard E. Teichgraeber,* 64 T.C. 453 (1975), holding that letter rulings and technical advice memorandums were not discoverable because the treatment of the taxpayers involved in those letter rulings or technical advice memorandums was not relevant in deciding the proper tax liability of Mr. Teichgraeber. Mr. Davis disputes our conclusion that such rulings were irrelevant; he contends that the treatment of other similarly situated taxpayers should have been considered by the Court; he recognizes that the letter rulings and technical advice memorandums might not be precedents governing the treatment of Mr. Teichgraeber, but he asserts that the Commissioner had the duty to provide consistent treatment of Mr. Teichgraeber or to funish an adequate explanation of any differences in treatment.

It has long been the position of this Court that our responsibility is to apply the law to the facts of the case before us and determine the tax liability of the parties before us; how the Commissioner may have treated other taxpayers has generally been considered irrelevant in making that determination. *Bernard E. Teichgraeber,* 64 T.C. at 456; *Eli D. Goodstein,* 30 T.C. 1178, 1190-1191 (1958), affd. 267 F. 2d 127 (1st Cir. 1959); *Minchin v. Commissioner,* 335 F. 2d 30, 32-33 (2d Cir. 1964), affg. a Memorandum Opinion of this Court; *Carpenter v. Commissioner,* 322 F. 2d 733, 736 (3d Cir. 1963), affg. a Memorandum Opinion of this Court; *Gerstell v. Commissioner,* 319 F. 2d 131 (3d Cir. 1963), affg. per curiam a Memorandum Opinion of this Court; see *Bookwalter v. Brecklein,* 357 F. 2d 78, 82 (8th Cir. 1966); *Weller v. Commissioner,* 270 F. 2d 294, 298-299 (3d Cir. 1959), affg. 31 T.C. 26 and 31 T.C. 33 (1958); *Shakespeare Co. v. United States,* 389 F. 2d 772, 777 (Ct. Cl. 1968); *Knetsch v. United States,* 348 F. 2d 932, 940 (Ct. Cl. 1965), cert. denied 383 U.S. 957 (1966); see also *Dixon v. United States,* 381 U.S. 68, 72-76 (1965); *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183-184 (1957). Any change in that position would have widespread ramifications in the

administration and application of the Federal tax laws and in the conduct of our work. The volume of the transactions that would have to be considered would present an unusual problem. Over 11,000 new cases were commenced in this Court in the past year, and although many of those cases are settled, the Court still has a herculean task to keep abreast of its caseload. Were we to embrace the principles urged by Mr. Davis, the task would be magnified. Every trial would be extended, for it would then become necessary to allow the petitioner to inquire into the Commissioner's treatment of other similarly situated taxpayers. Moreover, any decision to require the publication of all letter rulings involves a weighing of the advantages to be secured by such publication against the possible adverse effect on the rulings practice, and the ultimate decision may involve the delicate balancing of various considerations. Such a decision may require the drawing of some sophisticated distinctions. See H.R. 10612, 94th Cong., 1st Sess., sec. 1212 (1975) (as passed by the House of Representatives); H. Rept. No. 94-658, 312-325 (1975). Although the implementation of the position advocated by Mr. Davis would present many problems, those problems may not be insurmountable, and the notion of equal justice has strong appeal in our society and might lead to the conclusion that his position should ultimately be adopted. Yet, a full appreciation of the ramifications of this matter makes abundantly clear that it should be approached cautiously. In accordance with sound judicial administration, such a matter should only be considered when necessary to do so in order to decide the case before us.

In this case, we have concluded that it is unnecessary for us to face and decide the question of whether a duty of consistency should be applied to the actions of the Commissioner. The present Rules of Practice and Procedure of this Court authorize discovery of relevant nonprivileged matters by means of interrogatories or notices to produce (Rules 70, 71, and 72), and such rules took effect on January 1, 1974, so that prior to the trial of this case, the petitioners had ample opportunity to seek discovery of those materials. Yet, Mr. Davis never sought discovery of such materials and therefore never presented to this Court the question of whether to order production of them. His failure to seek discovery cannot be justified by our decision in *Bernard E. Teichgraeber, supra,* for that opinion was issued subsequent to the trial of this case. Since the petitioners never

sought discovery, they are in no position to challenge our holding in *Teichgraeber,* and we express no opinion as to whether we would hold the letter rulings to be discoverable in this case.

Despite Mr. Davis' forceful argument, we have concluded that there is no reason for this Court to undertake the enforcement of the FOIA. Under that Act, he could have commenced an action in the District Court to compel the Commissioner to produce the requested materials, and had he commenced such action, the District Court would have had an opportunity to pass on whether such materials should be disclosed under that Act. That Act establishes an orderly procedure for its enforcement, and we see no compelling reason to create additional procedures. Mr. Davis has given no reason to indicate why he did not pursue the procedures established by that Act or as to why those procedures were not adequate in this situation.

Moreover, it is clear that this Court should not undertake generally to enforce the FOIA. There would be absolutely no occasion for us to do so except in connection with tax disputes. In connection with tax controversies that are before us, we have our own procedures to compel the production of relevant evidence, and there has been no showing that those procedures are inadequate. In fact, the use of discovery may enable a party to obtain materials that might not be disclosed under the FOIA. Compare *Blair v. Oesterlein Machine Co.,* 275 U.S. 220 (1927), holding that tax returns may have to be disclosed in some circumstances, with *Tax Analysts & Advocates v. I.R.S.,* 505 F. 2d 350 (D.C. Cir. 1974), holding that tax return information is not to be disclosed under the FOIA. For these reasons, we are satisfied that in the interest of orderly administration of the laws, this Court should not undertake to implement the provisions of the Freedom of Information Act.

*Decision will be entered for the respondent.*