EDUARDO and CLAUDETTE ANTUNA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Antuna v. Commissioner
Docket No. 11237-76
United States Tax Court
T.C. Memo 1977-435; 1977 Tax Ct. Memo LEXIS 9; 36 T.C.M. (CCH) 1778; T.C.M. (RIA) 770435; December 27, 1977, Filed Claudette Antuna, pro se. Jan S. Neiman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Lehman C. Aarons, pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 5 of this Court. [1]
The Court agrees with and adopts the opinion of Special Trial Judge Aarons which is set forth *10 below. OPINION OF SPECIAL TRIAL JUDGE AARONS, Special Trial Judge: Respondent determined a deficiency in petitioners' federal income tax for 1974 in the amount of $405.52. The only issue before the Court is the deductibility under section 162 [2] of educational expense of Claudette Antuna, (hereinbelow referred to as "petitioner") during the year 1974. FINDINGS OF FACT Some of the facts were stipulated. The stipulation of facts, including the exhibit attached thereto, is incorporated herein by reference. Petitioners are husband and wife whose legal residence at the time of filing of the petition was Miami, Florida. They filed a timely return for 1974. Petitioners claimed a deduction for an education expense in the amount of $2,210. The respondent disallowed the entire claimed deduction on the ground that the expenses were incurred to meet the minimum education requirement for qualification in petitioner's employment. Petitioner received a bachelor's degree in Latin American studies from the University of Miami in 1966. In 1972, she received a certificate *11 in Human Services from the University of California at Santa Cruz. During the years 1971, 1972 and 1973, she was employed as a pediatric social worker by Stanford University. In August, 1973, petitioner commenced employment on a part-time basis as a registration clerk, a clerical position, at Variety Children's Hospital ("Variety") in Miami, Florida. She worked approximately 16 hours each week at that position. Likewise in August, 1973, petitioner commenced studies in the master's program in social work at Barry College in Miami, Florida. She received her master's degree in social work from Barry College in 1975. The claimed education expense deduction relates to amounts expended in pursuing the master's degree. In November, 1973, petitioner commenced work at Variety as a pediatric social worker. She worked approximately 16 hours each week at that position during the remainder of 1973 and during 1974. Petitioner also continued to work 8 hours each week as a registration clerk until the middle of 1974. A master's degree in social work is, and was during 1974, a minimum educational requirement imposed by Variety for employment as a pediatric social worker, and petitioner *12 would not have been selected by Variety as a pediatric social worker had she not agreed to obtain her master's in social work. The evidence is conflicting, however, as to whether petitioner was informed that obtaining her master's was "absolutely essential to continue in that job". A master's degree was not universally required for qualification as a pediatric social worker in 1974 or earlier years; it was not so required for qualification for petitioner's position with Stanford University in the years preceding the year at issue. Moreover, although petitioner has continued her principal employment to the present date with Variety, she also has worked part time as a social worker, commencing in November, 1974, for Dade County Association for Retarded Citizens, and that Association did not require a master's degree. OPINION The issue we have to decide is whether achievement of a master's degree in a social work was a minimum educational requirement for qualification in petitioner's employment. Respondent has not contended that petitioner's pursuit of her master's qualified her for a "new trade or business". See Regs. § 1.162-5(b)(3). It is clear that petitioner was qualified *13 to practice her profession as a social worker in some parts of the United States and indeed with another employer in the State of Florida without having achieved a master's degree. But with respect to Variety, which was in 1974 and which has remained her principal employer, the record contains the unequivocal and uncontradicted testimony of the Assistant Executive Director of that Hospital that a master's degree in social work is and was in 1974 required for employment as a pediatric social worker and that petitioner would not have been selected for that position had she not agreed to obtain her masters. A conflict arises not as to the existence of such requirement, but as to whether it had been communicated to petitioner. Petitioner claims that she has no recollection of any such communication, had no knowledge of any such requirement before undertaking her master's studies, and would have undertaken those studies in any event because of her awareness of the "geometric increase" in the value of her services which would result from such higher education. Section 1.162-5(a) of the regulations permits the deduction of education expenses which maintain or improve skills required *14 by an individual in his employment or other trade or business, or which meet the express requirements imposed as a condition to retention of employment. Section 1.162-5(b)(2) carves out an exception in the case of education of an individual "which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business * * *. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment." And section 1.162-5(b)(1) states specifically that if (b)(2) applies, the education expenses are nondeductible even though the education may improve skills, or may meet the express requirements of the individual's employer. Section 1.162-5 of the regulations has been held to be valid. Weiszmann v. Commissioner,52 T.C. 1106 (1969). And it is now clearly established that the subjective purposes of the individual in obtaining the education are irrelevant. Objective standards must be applied. Weiler v. Commissioner,54 T.C. 398 (1970); Bodley v. Commissioner,56 T.C. 1357 (1971). *15 In applying, as we must, an objective standard, petitioner's intentions and motivations at the time she commenced and while she was continuing her work towards her master's become wholly irrelevant.The objective fact which must control the disposition of this case is the uncontroverted fact that petitioner's principal employer, Variety, had a minimum requirement of a master's degree for qualification for petitioner's job. Whatever petitioner had in her mind, and whether or not such a requirement was communicated to her as being "absolutely essential to continue in that job", the education in question did in fact enable her to meet the minimum requirement for her job with Variety. See and compare, Davis v. Commissioner,65 T.C. 1014 (1976); Jungreis v. Commissioner,55 T.C. 581 (1970). We note, that in addition to ruling out any consideration of subjective reasons for the education in question, the language of the regulations and the cases cited make it clear that the minimum requirements are the requirements of a particular employer for a particular job. Thus, for example, in Davis,supra, the education in dispute was a *16 Ph.D. program enabling the taxpayer therein to become a permanent faculty member at a particular University, i.e., the University of Chicago. She had been in social work in other areas for many years. Undoubtedly she could have continued in such work and even obtained faculty positions at other schools without the Ph.D. degree. Accordingly, since we must concern ourselves here with the minimum requirements of petitioner's principal employer, Variety, and since we must apply an objective test, we have no choice but to sustain respondent's determination. In accordance with the foregoing, Decision will be entered for the respondent. Footnotes
1. Pursuant to General Order No. 5 dated October 1, 1976, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
2. Statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩