Kenneth C. Davis and Inger P. Davis, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 9786–76.     Filed February 15, 1978.

Kenneth C. Davis, pro se.
*Timothy L. Nelson,* for the respondent.

OPINION

Dawson, *Judge:* On September 12, 1977, the petitioner filed, pursuant to Rule 70, Tax Court Rules of Practice and Procedure, a motion for discovery of Internal Revenue Service private letter rulings contained in the "reference" files which are of general application concerning the deductibility of charity contributions of property that taxpayers have received by gift or otherwise without paying an income tax on receipt of the property. On October 17, 1977, respondent filed a motion for a

---

protective order to relieve him from complying with petitioner's motion for discovery. Arguments on the respective motions of the parties were heard in Los Angeles, Calif., on November 1, 1977, and the motions were taken under advisement.

The key issue confronting us with respect to these motions is whether the private letter rulings sought by petitioner are relevant to the disposition of the legal issues involved in this case.

On August 2, 1976, respondent mailed a notice of deficiency to Kenneth C. Davis (petitioner) and Inger P. Davis for the taxable years 1972 and 1973. In the notice of deficiency respondent disallowed a portion of the charitable deductions claimed by petitioner for 1973 for books received from the West Publishing Co., used and then donated to the University of Chicago Law Library. Respondent determined that petitioner had not established that he was entitled to the deduction. Respondent also determined that receipt of some of these books by petitioner constituted income which was not reported in 1972 and 1973.

Petitioner contests the entire amount of the deficiencies for both years. He alleges in his petition that "the position of the Commissioner is obviously *unreasonable* * * * that, at one and the same time, (a) taxpayers must pay a tax on receipt of the books, and (b) that taxpayers have no deduction for giving the books to charity."

On March 14, 1977, petitioner filed a motion in which he asked this Court to enforce discovery[1] by compelling respondent to produce Internal Revenue Service rulings (with the names and other indications of the identity of particular taxpayers deleted) issued to Congressmen who received from the Government free copies of the Congressional Record and then gave them to charitable organizations and deducted the value of the gifts. The motion was granted on July 19, 1977. In a memorandum sur order accompanying that motion, it was stated in part:

---

[1]Petitioner's previous request for these rulings under the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552, in accordance with sec. 6110, I.R.C. 1954, was unsuccessful. Respondent informed him that Congress had provided no funding under this section for rulings issued prior to Nov. 1, 1976, but that rulings could be furnished when funds were made available.

In a prior case, *Davis v. Commissioner*, 65 T.C. 1014 (1976), we held (1) that this Court was not the proper forum in which to seek enforcement of FOIA and (2) that no opinion would be expressed as to whether letter rulings are discoverable since petitioner had not sought discovery. Since petitioner has filed a motion to compel discovery in the instant case, the issue of whether letter rulings are discoverable is now properly before us.

While much of petitioners' argument is difficult to follow, one contention they make is that a uniform practice by respondent of issuing letter rulings on a particular subject with a consistent holding can be sufficient to establish an administrative practice, the retroactive departure from which in a manner not uniform as to all taxpayers similarly situated would constitute an abuse of discretion.

While we do not pass on the merits of petitioners' position in regard to any duty of consistency, administrative practice or abuse of discretion by respondent, in our view there are statements in certain cases which are sufficiently broad, particularly cases dealing with retroactive revocation of rulings in a manner discriminatory towards certain taxpayers as compared to others to justify under the particular facts here present granting petitioners' motion for discovery.

On September 13, 1977, respondent provided petitioner with the requested rulings.[2]

Petitioner now seeks by way of discovery the "reference" files[3] on "the question of deductibility of charitable contributions of property which taxpayers have received by gift or otherwise without paying an income tax on receipt of the property."

Respondent asserts that under the criteria set forth by this Court in its memorandum sur order on July 19, 1977, which granted petitioner's request for discovery of the private letter rulings issued to the Congressmen, no basis exists for granting the present motion for discovery because the positions in those rulings are consistent with respondent's position in this case. It is also his contention that the disallowance of the charitable contributions in this case is not a retroactive revocation of rulings in a manner discriminatory to the petitioner. Respondent argues, therefore, that the "reference" files for the private letter rulings provided are not relevant and are thus not discoverable in the Tax Court. In support of his argument

---

[2]The rulings involve four cases of Congressmen all of whom were permitted a charitable deduction for copies of the Congressional Record provided free as a Government service and donated to a recognized charity. Petitioner asked and subsequently received written confirmation from respondent that, after a diligent search, to the best of his knowledge these four rulings were the only ones on point.

[3]Letter rulings are separated into two categories for filings purposes. Those that are deemed to be of no significance as reference material are put into a routine or "historical" file which is organized alphabetically by the taxpayer's name and is ordinarily retained for a period of 4 years. Those considered to have reference value are placed in a "reference" file, together with published revenue rulings, proposed revenue rulings, Treasury decisions, court decisions, and special reports. Routine files are destroyed after 4 years but reference files are retained for approximately 40 years. See *Tax Analysts & Advocates v. I.R.S.*, 505 F.2d 350 (D.C. Cir. 1974).

respondent cites Rule 70(b), Tax Court Rules of Practice and Procedure, and *Teichgraeber v. Commissioner*, 64 T.C. 453 (1975).

At issue is the scope of the disclosure of information for private letter rulings issued to taxpayers inquiring about tax consequences of possible transactions. More specifically, we must decide whether the information requested by petitioner is relevant to the issues of whether inclusion in income for the receipt of books and a charitable deduction for their donation are permitted in his case.

Petitioner argues that some discrimination exists because the rulings received indicate that Congressmen are permitted a charitable deduction which might be denied to a private citizen. He admits, however, that in the case of rulings with one outcome for four taxpayers and a different outcome for, say, 1,000 taxpayers,[4] any one in the latter group has only a weak case for showing discrimination. At this point he seeks discovery of the "reference" files to determine if any taxpayers, other than the four Congressmen, have received a determination contrary to the results in his notice of deficiency, thus strengthening his case of discrimination and also showing an inconsistency toward taxpayers by respondent. Petitioner strongly urges that this Court is bound by "equal justice" to permit pursuit of his claim to this end.[5]

We disagree. We are cognizant of the problems a party

---

[4] See generally K. Davis, Administrative Law Text, sec. 3A.9 (3d ed. 1972).

[5] Petitioner elaborates upon his interpretation of the term "equal justice" in a memorandum filed in support of his first motion for discovery:

"In some circumstances, the Tax Court in the new era will have to concern itself with problems of equal justice, even when the substantive tax law supports the IRS decision the taxpayer is challenging in the Tax Court.

"Here is an example: Let us assume that X is a faculty member of a university, which pays the tuition of X's children at another university, and that the IRS rules that X must pay an income tax on the amount of the tuition. Let us further assume that the Tax Court would hold that X has income in the amount of the tuition. If X challenges the IRS ruling in the Tax Court, could the Court hold in X's favor, even if the Court agrees that the amount of the tuition is taxable? We submit that the answer may be yes, if further facts are added. If the taxpayer by using sec. 6110 demonstrates that in hundreds of cases prior to X's case and in hundreds of cases after X's case, the IRS has ruled that such tuition payments are not taxable, and if the IRS has given no explanation for singling out X for different treatment, then the Tax Court should hold that X has been denied equal justice.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"The basic principle may be this: When the IRS exercises its discretion not to tax even when it has power to tax, it must do so evenhandedly, and all federal courts that decide tax cases have a responsibility for correcting a flagrant departure from evenhandedness."

Petitioner stated in oral argument that "probably that objective [of 'equal justice'] is unattainable," but nevertheless the concept should serve as a principle applied at the discretion of the courts.

seeking disclosure has in demonstrating the relevance of documents to which he has had no previous access. Due process, however, does not require that a litigant be provided the benefit of every record which might have a remote bearing on his case. A party's right to discovery is determined by reference to principles of relevancy and materiality as set forth in Rule 70, which is derived generally from the Federal Rules of Civil Procedure.[6] What is discoverable are those documents and papers which the Court determines are reasonably relevant to a party's case.

The substance of petitioner's case involves the determination of whether the value of books received must be included in his income and whether their value is properly deductible when they are later donated to charity. These are the issues to which relevance must be directed.[7] As we see it, the petitioner's view is that, irrespective of substantive issues, if he is not accorded like treatment with other taxpayers, the resulting discrimination would render nugatory any governing code sections because of respondent's inconsistency. While we granted petitioner's right to discovery in the first instance, we do not feel compelled to grant him the right to have every private letter ruling contained in the reference file on the substantive issues. His request is too broad to be necessary to afford a meaningful opportunity to challenge the deficiency. We will not put aside the substantive issues while we consider relevancy of documents sought in discovery. We find the following language in *Shakespeare Co. v. United States*, 389 F.2d 772, 777 (Ct.Cl. 1968), applicable to this case:

We can find nothing in the record before us to indicate either good cause, relevancy, or that the documents sought appear reasonably calculated to lead to the discovery of admissible evidence, as required by the rules, other than the statement by plaintiff * * * that the rulings sought are relevant. Nor is there a showing that the documents sought are material to the issues as is required by this court's ruling in *Kamen Soap Products Company, Inc. v. United States, supra*. We say this in particular because (1) if any letter rulings were contrary to the application of the law, they obviously could not estop the government

---

[6]The scope of discovery under Rule 70(b) of this Court includes evidence inadmissible at trial if it is "reasonably calculated to lead to discovery of admissible evidence." It also includes information involving opinion or contention if it relates to fact or to application of law to fact.

[7]To determine what is "relevant to the subject matter involved in the pending case" within the purview of Rule 70(b) is rendered more difficult by respondent's failure to explain his grounds for denying the deduction.

from correcting them even with respect to the same taxpayer (*Dixon v. United States*, 381 U.S. 68, * * * (1965); *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, * * * (1957)), and (2) even though a taxpayer receiving a private ruling issued by the National Office of the Internal Revenue Service might be entitled to rely upon it until revoked, no court has held a private ruling binding on the government as against other taxpayers. See *Bornstein v. United States*, 345 F.2d 558, 170 Ct.Cl. 576 (1965); *Knetsch v. United States*, 348 F.2d 932, 172 Ct.Cl. 378 (1965), cert. denied, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966); *Bookwalter v. Brecklein*, 357 F.2d 78 (8th Cir. 1966).

Although we are aware of the cases[8] where various courts under particular circumstances have recognized a duty of consistency to taxpayers similarly situated,[9] there is a point at which the fine line between what might be specifically relevant (and therefore discoverable) and what might be remotely relevant (and therefore not discoverable) is crossed. We think it is the duty of this Court, as a trial court, to draw that line. We note that when petitioner argues "equal justice," he also acknowledges that it is within the discretion of the courts to decide "how far to push this principle." We are mindful of the responsibility inherent in exercising that discretion; nevertheless, the duty remains within the Court's province and is not controlled by the characterization of either party. It is essential that the Court have control over the scope of discovery. Here we think the material sought by petitioner is not sufficiently pertinent to the substantive issues to be considered relevant and, therefore, it is not "reasonably calculated to lead to discovery of admissible evidence."

We recognize that in certain cases material might be relevant in establishing whether respondent has violated a duty of consistency owed to a taxpayer (for example, by exercising his discretion in such a manner that only one taxpayer is affected; *Pierson v. United States*, 428 F. Supp. 384 (D.Del. 1977)). Compare *Branerton Corp v. Commissioner*, 64 T.C. 191 (1975), granting discovery where petitioner bears a heavy burden of

---

[8]For example, *Tax Analysts & Advocates, supra; Sirbo Holdings, Inc. v. Commissioner*, 476 F.2d 981 (2d Cir. 1973) remanding 57 T.C. 530 (1972); *International Business Machines Corp. v. United States*, 343 F.2d 914 (Ct.Cl. 1965); *Exchange Parts Co. of Fort Worth v. United States*, 279 F.2d 251 (Ct.Cl. 1960); *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 (1957).

[9]We are not approving the view that discriminatory treatment by respondent is necessarily a ground upon which relief should be granted in all tax cases. We have expressed serious doubts about the validity of such a claim in ordinary tax deficiency cases which are tried de novo in this Court. See *Davis v. Commissioner*, 65 T.C. 1014, 1021–1023 (1976); *Teichgraeber v. Commissioner*, 64 T.C. 453, 456 (1975). Cf. *Mid-Continent Supply Co. v. Commissioner*, 67 T.C. 37, 47 (1976).

proof on the issue of whether claimed bad debt reserves were reasonable, with the cases cited in footnote 8, *supra*. Moreover, in discussing *Automobile Club of Michigan v. Commissioner, supra*, which held that the Commissioner is empowered retroactively to correct mistakes of law in the application of the tax laws to particular transactions, the Supreme Court in *Dixon v. United States*, 381 U.S. 68, 73, noted:

> He may do so even where a taxpayer may have relied to his detriment on the Commissioner's mistake. See *Manhattan General Equipment Co. v. Commissioner of Internal Revenue*, 297 U.S. 129 * * * . This principle is no more than a reflection of the fact that Congress, not the Commissioner, prescribes the tax laws. The Commissioner's rulings have only such force as Congress chooses to give them, and Congress has not given them the force of law. Consequently it would appear that the Commissioner's acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting a tax otherwise lawfully due.

Accordingly, we reject the petitioner's contention that all the private letter rulings contained in the reference file of respondent that are of general application on the substantive issues herein are relevant for purposes of discovery. In our view such private letter rulings bear too nebulous a relationship to the specific substantive issues involved in this case. Petitioner has not established to our satisfaction that the material he seeks would be essential to our determination of the legal questions requiring resolution in his case. He is attempting to burden discovery with an inordinate volume of documents which we would consider inadmissible. Since they are not legally relevant, even if the private letter rulings can be viewed as potentially relevant,[10] such relevance is nevertheless too remote to cause the underlying documents to be discoverable under Rule 70(b). Suffice it to say, we are not persuaded that the information sought by petitioner will aid in focusing on the precise issues to be decided in this case and in stipulating the necessary facts. Therefore, the petitioner's motion for further discovery will be

---

[10]For example, in *Corelli v. Commissioner*, 66 T.C. 220 (1976), a private letter ruling issued by respondent to an applicant other than the taxpayer, *but covering contractual arrangements among taxpayer and others* was held relevant in the determination of whether the taxpayer's actions were *due to negligence or intentional disregard of rules and regulations*.

denied and respondent's motion for a protective order will be granted.

*Appropriate orders will be entered.*